MOSES TAGGART, ATTORNEY GENERAL, EX REL. THOMAS H. MASON AND WILLIAM H. SMITH, v. THOMAS H. PERKINS ET AL.

*Constitutional law—Corporations—Continuation of existence beyond period of thirty years—Quo warranto.*

1. The constitutionality of enactments passed by the Legislature has been called in question in many cases in this State by information in the nature of *quo warranto* filed by the Attorney General. *People v. Maynard*, 15 Mich. 463; *Attorney General v. Amos*, 60 Id. 372; *People v. Plank-road Co.*, 9 Id. 285; *Attorney General v. Holihan*, 29 Id. 116.

2. Act No. 16, Laws of 1882, as amended by Act No. 37, Laws of 1887, authorizes mining and manufacturing corporations organized *after* the passage of said acts, but not for the full constitutional period of 30 years, to renew their corporate existence for the remainder of said term, but said statute does not apply to corporations whose period of existence is fixed by their articles of association at 30 years, they being excluded from its terms, not by its language, but by the Constitution, which

limits their *creation* to a period of time not longer than 30 years.

3. The design of the framers of the Constitution was to place all purely private corporations on an equal footing, and to fix a limit of time, beyond which they should not continue to exist. This design would be frustrated if authority could be given them to perpetuate their existence by a resolution of their stockholders, or any other device.

4. The following propositions are summarized from the opinion of Mr. Justice CHAMPLIN:

*a*—The Constitution is the supreme law, and to its behests the courts, the Legislature, and the people must bow.

*b*—An unconstitutional statute is one only in form, and lacks the force of law, and is of no more saving effect to justify action under it than if it had never been enacted.

*c*—No corporation in this State can exist unless it be created by law, and every corporation, when called upon by the people to show by what authority it exercises the franchises and privileges of a corporation, must show a valid enactment of the Legislature for its authority.

*d*—The people have a deep and vested interest in maintaining all the constitutional limitations upon the exercise of legislative powers. *Allen v. McKeen*, 1 Sum. 314.

*e*—Article 19, § 9, of the Constitution, forbidding the extension by the Legislature of the existence of mining companies in the Upper Peninsula, relates to corporations in that section of the State organized under *special* charters, and whose term of existence was limited to 30 years, and was not intended to apply to corporations thereafter formed under general laws.

*f*—The power to extend corporate existence beyond the time limited by charter, either before or after the limitation has expired, is possessed by the Legislature as a prerogative of sovereignty, and is not conferred by constitutional provisions. Such power may be exercised at the pleasure of the Legislature, if there is no express denial, or denial by necessary implication by other limitations placed upon legislative power, contained in the Constitution.

*g*—As grants of power to the Legislature may be found from implications arising from express grants, so limitations upon legislative power may be found from implications arising from express limitations in the Constitution.

*h*—It may be laid down as a postulate that what the Legislature is prohibited from doing by special enactment it has no authority to authorize to be done under a general law.

*i*—Unless restricted by the Constitution, the Legislature has the undoubted right to grant such special acts of incorporation

as it sees fit; and where the Constitution reserves the power of repeal, alteration, and amendment, it may make such amendments as it deems advisable, which do not affect vested rights.

j—The general law under which corporations are formed, together with the articles of association adopted in pursuance thereof, sometimes called "constating instruments," constitute the charter of the corporation.

Information to test the right of respondents to renew a mining corporation. Heard October 18, 1888. Decided January 18, 1889. The facts are stated in the opinion.

*Moses Taggart,* Attorney General (*Alfred Russell* and *Don M. Dickinson,* of counsel), for relators.

*Thomas H. Talbot* and *Benton Hanchett,* for respondents.

CHAMPLIN, J. This is a proceeding to try the right of the respondents to renew a mining corporation organized on April 4, 1853, for the term of 30 years. The case stands upon demurrer by the respondents to the Attorney General's replication to their plea to his information.

The information sets up that the persons named are stockholders in a corporation called the "Pewabic Mining Company," purporting to be a renewed corporation, and for the space of one month last passed and upwards, at Hancock, in the county of Houghton, in this State, have used, and still do use, without any warrant, grant, or charter, the liberties, privileges, franchises of being a body corporate in law, fact, and name, by the name of the "Pewabic Mining Company," purporting to be a renewed corporation, and by that name to plead and be impleaded, to answer and be answered unto ; and also the liberties, privileges, and franchises of mining, smelting, and manufacturing copper, iron, and silver minerals and ores, and for acquiring, holding, selling, and conveying

73 MICH. 20.

all property, real and personal, necessary or convenient for carrying on the same; and during all the time aforesaid the said persons have usurped, and still do usurp, upon the said people; and praying process against such persons to answer the people of the State of Michigan by what warrant they claim to have, use, and enjoy the liberties, privileges, and franchises aforesaid.

To the information the respondents interposed a plea, setting forth that they were stockholders in the original Pewabic Mining Company in and during the year 1883, prior to the time when the 30 years fixed by the articles of association by which said company was formed would expire, and have ever since continued to be, and still are, such stockholders.

The plea also sets up the exercise of the functions of a corporation by the Pewabic Mining Company during said 30 years upon a certain quarter section of land in Houghton county, Michigan, the location of its mine; the direction of the lode of copper, and the dip of the vein, and the necessity thereby of purchasing other land in order to continue to operate such lode; the purchase, in 1879, of such land, paying therefor $275,000, raised by assessments upon its capital stock; the knowledge of the shareholders paying such assessments that the lode on the land so purchased could not be explored and exhausted by mining during said period of 30 years, nor for many years to come,—the desire and purpose of the stockholders in making the purchase being to obtain a renewal of the corporate existence of said Pewabic Mining Company for another period, commencing with the expiration of said first period of 30 years, running from April 4, 1853; that by mistake or oversight no steps were taken to extend the time of the continuance of the corporation before the time limited by the articles had expired, but the officers

and agents continued to carry on its business of mining, and levying and collecting assessments, after the 30 years had expired, until the directors became aware that such time had expired, and then they were advised that a new corporation could be formed, and the property of the Pewabic Mining Company could be transferred to it, and each stockholder in the old corporation could have issued to him the same number of shares of stock in the new corporation which he held in the old, which was done, and the Pewabic Copper Company was formed, and the property of the Pewabic Mining Company was transferred to it for the nominal sum of $50,000; that this action was ratified by more than two-thirds of the stockholders in the old company, and only about one-sixth of the stock voted against the plan. The vote was taken on March 26, 1884, and on March 31 in that year the relators in this case, as stockholders in the old company, filed their bill of complaint in the circuit court of the United States for the Western district of Michigan, Northern division, in equity, against both the old and new corporations, and the directors of the Pewabic Mining Company, to restrain them from carrying out the plan of reorganization, and for other relief, including the winding up of the affairs thereof, and the distribution of its assets among the shareholders. An answer was put in and proofs taken, and upon a hearing upon the merits a decree was rendered in the cause on May 4, 1886, which decree is appended as a part of the plea in an exhibit. From this decree both parties appealed to the Supreme Court of the United States, and the suit is still pending and undecided. By the said decree the continued existence of the Pewabic Mining Company was recognized and provided for, and special provision was made in said decree that in case, upon the offer of the property of the Pewabic Mining Company at public auction for sale, there should

not be a bid for the aggregate of the property and assets of said company in excess of $50,000 above the amount of the debts of said company existing at the time fixed for such sale, then the said arrangement for the sale of the property of said Pewabic Mining Company, approved at said stockholders' meeting above set forth, to the Pewabic Copper Company, should be carried out, as provided by the resolution adopted by the said stockholders of the said Pewabic Mining Company at said meeting.

By reason of the aforesaid suit, the proceedings therein, the decree and the said appeals therefrom, and the pendency of said suit in the Supreme Court, undetermined and awaiting final hearing and determination, the said corporation, the Pewabic Mining Company, has continued, during all the time aforesaid, and still continues, to exist as a corporation, and has not been at any time and is not dissolved, and its property and business have not been closed, settled, or disposed of. These respondents refer to the said suit in equity, the pleadings, decree, and appeal therein, as a part of their plea.

The plea then sets forth that the dissolution of such corporation had not become complete, nor has it yet become complete, and that a special meeting of such corporation was called, to be held on February 4, 1888, under and in pursuance of Act No. 37 of the Laws of Michigan, approved March 19, 1887, for the purpose of directing the continuance of the corporate existence of the Pewabic Mining Company for such further term, not exceeding 30 years, as might be expressed in a resolution for that purpose. The plea then sets up specifically the proceedings by which it is claimed the continuance of the corporation was effected. The resolution passed by such meeting reads as follows:

" *Resolved,* That the Pewabic Mining Company hereby extends and directs the continuance of its corporate exist-

ence for a period of thirty years from April 4, A. D. 1883, as authorized by an act of the Legislature of the State of Michigan approved March 14, 1882, entitled 'An act to provide for renewing the incorporation of companies organized for mining and manufacturing purposes,' as amended by an act approved March 19, 1887."

No claim is made here that the laws referred to were not complied with, and it is unnecessary to state that portion of the plea which sets out the proceedings. The respondents say that their action in the premises is authorized by the laws of the State; that it was and is necessary to the care and protection of their interests as stockholders in the Pewabic Mining Company, in respect to said company and its property; and that they are not guilty of the usurpation charged in the information.

The Attorney General filed his replication to the plea, setting forth—

"That the said relators, Thomas Henry Mason and William Hart Smith, were stockholders in the original Pewabic Mining Company mentioned in said information and plea before the time when the 30 years fixed in the articles of association by which said corporation was formed, on April 4, 1853, expired, and prior to the time when the corporate existence of said company was actually terminated by limitation of law for the exercise of powers derived from its charter, to wit, April 4, 1883, and attended all the meetings for the alleged renewal of said corporation under Act No. 37 of the session laws of the State of Michigan, for the year 1887, approved March 19, 1887, which are set out specifically in said plea, and protested against and voted against the resolutions and other proceedings for such alleged renewal, and against said alleged organization in 1887, under which said respondents justify in their said plea; and that the aforesaid act, whereby any corporation organized under the laws of Michigan for mining or manufacturing purposes, and whose power would expire at a given time, might be continued in existence for the purpose of continuing the business for which it was established, by a vote of two-thirds of its capital stock at any time before the dissolution of such corporation should become com-

plete, was passed subsequent to the time of the grant
of the charter of said original Pewabic Mining Company,
and was not within the constitutional power of the Legis-
lature of the State of Michigan as respects the said last-
named corporation, having its corporate existence before
the time of the enactment of said law, the stockholders
in which associated upon the faith that after the time
limited as aforesaid in the charter of said corporation
they might separate, and each take his share of the
common fund after the payment of the debts; and the
said Attorney General says that such was the contract of
the said stockholders with the State, and with the said
corporation, and with their fellow-members therein, and
that the said act of 1887 impairs the obligation of such
contract, and deprives the said stockholders of their
property without due process of law; and the said act
is in violation of Article 1, § 10, subd. 1, of the Consti-
tution of the United States, and subdivision 1 of the
fourteenth amendment thereto, and Article 4, § 43, of
the Constitution of this State.

"The act of 1887 aforesaid was passed, and the pro-
ceedings for renewal of said original Pewabic Mining
Company were conducted, after the expiration of the
qualified existence of the said corporation for the term
of three years after April 4, 1883, aforesaid, under sec-
tion 4867, How. Stat., Mich., to wit, after April 4, 1886;
and at the time of the passage of said act, and of the
conducting of the alleged proceedings under which the
said respondents justify in their said plea, the corporate
existence of said corporation was not about to terminate
by limitation of law, but had 'already terminated, and the
dissolution of said corporation had become complete."

The replication then sets up with particularity the bill
of complaint filed in the United States court, the answer
thereto, and the proceedings therein, including a report
made by a special master prior to the decree; and con-
cludes as follows:

"No exceptions were filed to the foregoing report,
which stood confirmed, and afterwards the cause was
heard upon pleadings and proofs before the Hon. Stanley
Matthews, Associate Justice of the Supreme Court of the
United States, and a decree was rendered in favor of the

complainants, and the copy thereof attached to and forming a part of said plea is correct, and appeals were taken from the same, which are still pending in the Supreme Court of the United States, and not disposed of, and were not disposed at the time the qualified existence of said original corporation, for the purpose of suits, closing its concerns, disposing of its property, and dividing its stock, ceased, on April 4, 1886; and the Attorney General says that the dissolution of said Pewabic Mining Company became complete before the taking of the said proceedings for the renewal of said original corporation, under which proceedings the said respondents justify in their said plea, although the disposition of said appeals is continued beyond the said last-named day.

"That the said relators acquired their stock in the said original Pewabic Mining Company after the year 1879, in which said corporation is stated in said plea to have purchased the quarter section specifically mentioned in said plea, and before April 4, A. D. 1883, on which day the corporate existence of said corporation, the original Pewabic Mining Company, terminated by limitation of law, and on which day the dissolution of said corporation became complete with reference to the purpose of continuing the business for which such corporation was established, and of exercising the powers derived by it from the charter. And this the Attorney General is ready to verify. Wherefore the Attorney General prays judgment, and that the said respondents may be adjudged to have usurped the said franchises," etc.

To this replication the respondents interposed a general demurrer.

Before proceeding to consider the merits of the case involved by the points of law raised by the pleadings, it is well to dispose of an objection taken to the remedy invoked by the Attorney General.

It is asserted by the respondents that the constitutionality of an act of the Legislature cannot be raised in a proceeding upon an information in the nature of a *quo warranto*, when the respondents justify under such act. The idea seems to be that the people are estopped from questioning the validity of a law enacted by their repre-

sentatives; that to an accusation by the people of Michigan of usurpation upon their government, a statute enacted by the people of Michigan is an adequate answer. The last proposition is true, but, if the statute relied on in justification is unconstitutional, it is a statute only in form, and lacks the force of law, and is of no more saving effect to justify action under it than if it had never been enacted. The Constitution is the supreme law, and to its behests the courts, the Legislature, and the people must bow. No corporation in this State can exist unless it be created by law, and every corporation, when called upon by the people to show by what authority it exercises the franchises and privileges of a corporation, must show a valid enactment of the Legislature for its authority. The Legislature and the respondents are not the only parties in interest upon such constitutional questions. As was remarked by Mr. Justice Story, in speaking of an acquiescence by a party affected by an unconstitutional act of the legislature:

"The people have a deep and vested interest in maintaining all the constitutional limitations upon the exercise of legislative powers." *Allen v. McKeen,* 1 Sum. 314.

The constitutionality of enactments passed by the Legislature has been called in question in many cases in this State by information in the nature of *quo warranto* filed by the Attorney General. *People v. Maynard,* 15 Mich. 463; *Attorney General v. Amos,* 60 Id. 372 (27 N. W. Rep. 571); *People v. Plank-road Co.,* 9 Id. 285; *Attorney General v. Holihan,* 29 Id. 116.

The cases cited in support of the position taken by respondents cannot prevail against the practice so firmly established in this State.

The case of *People v. Whitcomb,* 55 Ill. 172, is at variance with that of *Attorney General v. Holihan,* above cited. Besides, this proceeding was not instituted to test the

constitutionality of an act of the Legislature, but to try the right of certain persons to exercise the franchises and privileges of a corporation, and is expressly authorized by the statute. How. Stat. § 8635.

In the case of *People v. Railroad Co.*, 15 Wend. 113, it was not claimed that the statute conflicted with any constitutional provision of the state of New York, but it was claimed that it violated the Constitution of the United States. The court held that it did not. It was therefore a valid law, and a sufficient answer to a charge of usurpation.

The Constitution of this State contains the following provisions:

• "Corporations may be formed under general laws, but shall not be created by special act, except for municipal purposes." Article 15, § 1.
"No corporation, except for municipal purposes, or for the construction of railroads, plank-roads, and canals, shall be created for a longer time than thirty years." Id. § 10.
"The charters of the several mining corporations may be modified by the Legislature in regard to the term limited for subscribing to stock, and in relation to the quantity of land which a corporation shall hold, but the capital shall not be increased, nor the time for the existence of charters extended." Article 19, § 9.

Neither of these provisions were contained in the Constitution prior to the adoption of the present Constitution in 1850, and which took effect January 1, 1851.

In 1853 the Legislature passed a general law for the incorporation of mining and manufacturing companies, which was approved February 5, and took immediate effect. It authorized any three or more persons to sign and acknowledge articles of association, which, among other things, it was required should state the term of existence, not to exceed 30 years. Upon filing with the Secretary of State and with the county clerk of the

county in which it should conduct its mining business, and complying with the provisions of the act, the corporators became a body politic and corporate. Power to repeal, alter, or amend the act was reserved to the Legislature, and it was declared that the act was subject to the provisions of chapter 55, title 10, of the Revised Statutes of 1846, so far as applicable to companies formed thereunder.    Section 8 of this chapter provides:

"All corporations whose charters shall expire by their own limitation, or shall be annulled by forfeiture or otherwise, shall nevertheless continue to be bodies corporate, for the term of three years after the time when they would have been so dissolved, for the purpose of prosecuting and defending suits by or against them, and enabling them gradually to settle and close their concerns, to dispose of and convey their property, and to divide their capital stock, but not for the purpose of continuing the business for which such corporations have been or may be established."

It was under this statute that the Pewabic Mining Company mentioned in the pleadings was formed on April 4, 1853.    The term of its existence, as stated in its articles of association, was 30 years.

In 1882 the Legislature passed Act No 16, entitled:

"An act to provide for renewing the incorporation of companies organized for mining and manufacturing purposes."

It contained two sections, which read as follows:

"SECTION 1.    *The People of the State of Michigan enact,*    That it shall be lawful for any corporation organized under the laws of this State for mining or manufacturing purposes, whose corporate existence is about to terminate by limitation of law, at its annual meeting next preceding, or at a special meeting called for that purpose, to be held within one year immediately preceding, the date of such termination, by a vote of two-thirds of its capital stock, to direct the continuance of its corporate existence for such further term, not exceeding 30 years, as may be expressed in a resolution for that pur-

pose. Upon the adoption of such resolution by the stockholders, it shall be the duty of the president and secretary to make, sign, and acknowledge duplicate articles of association (as in the case of a new corporation), to which shall be appended a copy of the proceedings of such stockholders' meeting, certified by the secretary and verified by his oath, which articles of association shall be filed with the Secretary of State, and with the county clerk of the county where the corporation carries on its business, and be by them recorded in their respective offices at the expense of said corporation, and the copies so filed, the record thereof, or a certified copy of either of such records, shall be *prima facie* evidence of the facts therein recited.

"Sec. 2. Upon the expiration of the time limited for the existence of such old corporation, a new corporation shall be deemed to be formed by such articles of association, which shall at once succeed to all the property and rights of action of the old corporation, and shall be liable for all of its debts or other obligations, and the officers of the old corporation shall succeed to like offices in the new corporation, and every stockholder in the old corporation shall be, to a like extent, a stockholder in the new corporation."

This act was amended by Act No. 37, Laws of 1887, by inserting after the word "termination," in the first section these words, "or at any time before the dissolution of such corporation shall become complete."[1] It is under and by the authority of the act of 1882, as amended in 1887, that the respondents claim the right to exercise the franchises and privileges of a corporation.

Does this statute of 1882 renew an existing corporation, and continue it as the same corporation, or does it create a new corporation? If we look to the title of the act, we observe that it is an act to provide for renewing the incorporation of companies; that is, renewing the act by which such companies were incorporated. The act itself

[1] For later amendment see Act No. 129, Laws of 1889. Also, page 455 of same volume, for amendment to section 10, Article 15, of the Constitution. Also Act No. 141, Laws of 1889.

says that the existing corporation may "direct the continuance of the corporate existence" such further term, not exceeding 30 years, as may be expressed in a résolution for that purpose. No change is contemplated in the property, rights of action, liabilities, officers, or stockholders. Certainly such results cannot follow the expiration of an existing corporation, and the creation of a new one. There is nothing new about it, except the term of existence. There remain the old name, the assets, the old liabilities, the old officers, and the old stockholders. The term is renewed and extended. If it is a new corporation, then the object of the act is not expressed in its title. The language of the second section, that "a new corporation shall be deemed to be formed by such articles of association," must be held to refer to the renewed corporation, and not that a new corporation is actually formed. This construction harmonizes the body of the act with its title, and carries out the manifest intent of the Legislature. It is also the construction placed upon the act by the respondents, as is apparent from the language of the resolution above quoted, by which it is claimed the corporate existence of the Pewabic Mining Company was renewed, and its charter rights extended, 30 years.

Several constitutional objections are raised to this law by the Attorney General.

1. It is claimed that it violates the Constitution of the United States, because it impairs the obligation of contracts. The argument is that when the Pewabic Mining Company was formed the law of incorporation for such companies limited their duration to 30 years, at the end of which time their right to continue business ceased; that the corporation was then to be wound up, its debts paid, and its capital divided among its shareholders; and that non-assenting stockholders cannot be compelled to

embark in new enterprises, or to assume new duties and responsibilities, by the action of the majority, and that such an amendment or such an act of the Legislature as changes the duration specified in the charter, or changes the business specified in the charter, cannot be accepted by the corporation without the assent of every stock-holder. The objection raises some very interesting questions, but, as they are not necessary to a determination of the case, inasmuch as we base our decision upon other grounds, which lead to a conclusion adverse to respondents, we shall not discuss them.

2. It is claimed that the law is in violation of Article 19, § 9, forbidding the extension by the Legislature of the existence of the charters of mining companies in the Upper Peninsula.

This article of the Constitution of 1850 relates exclusively to the Upper Peninsula, and the mining companies therein referred to are those which were in existence by virtue of special charters at the time of the adoption of the Constitution. At that time there had been 48 special charters granted by the Legislature to mining companies in the Upper Peninsula. Three of such charters were unlimited or perpetual in duration, and 45 were limited to 30 years. All of these companies except one had been incorporated within three years prior to the adoption of the Constitution. The exception was the Lake Superior Fishing & Mining Company, whose charter was passed and approved March 31, 1840, and the business it was authorized to carry on was that of fishing and vending the produce of the same, and carrying on the fishing business. This continued until March 25, 1848, when an amendment was made by striking out the fishing business, and inserting mining and smelting. It was these existing corporations, whose term of existence had been limited to 30 years, that the Legislature was prohibited from extend-

ing. It was not intended to apply to corporations which should be thereafter formed under general laws, and furnishes no aid to the solution of the questions before us, except as it may afford an index to the intention of the constitutional convention in placing limitations upon the power of the Legislature to grant or extend acts of incorporation of this kind beyond the period of 30 years; and this brings us to the third objection to the constitutionality of the acts of 1882 and 1887.

The power to extend corporate existence beyond the time limited by charter, either before or after the limitation has expired, is possessed by the Legislature as a prerogative of sovereignty, and is not conferred by constitutional provisions. If there is no express denial, or denial by necessary implication by other limitations placed upon legislative power, contained in the Constitution, the power exists and may be exercised at the pleasure of the law-making power. That there is no express denial contained in the fundamental law is certain, and unless it is found in the provisions above quoted from Article 15 the power exists.

As grants of power to the Legislature may be found from implications arising from express grants, so limitations upon legislative power may be found from implications arising from express limitations in the Constitution. It may be laid down as a postulate that what the Legislature is prohibited from doing by special enactment it has no authority to authorize to be done under a general law. Unless restricted by the Constitution, the Legislature has the undoubted right to grant such special acts of incorporation as it sees fit; and where the Constitution reserves the power of repeal, alteration, and amendment, it may make such amendments as it deems advisable, which do not affect vested rights. Unless restricted, it may, with the consent of the corporators, and some

contend by the consent of a majority of its stockholders, renew and extend the corporate existence, and modify the manner of conducting the business. Let us suppose that the Constitution had not prohibited the granting of charters by special act, but did contain the restriction embraced in section 10, what would have been its effect upon the power of the Legislature? Such declaration that "no corporation, except," etc., "shall be created for a longer time than thirty years," is equivalent to a mandate that thus long, and for no longer time, shall any corporation be created. Is not such mandate a direct and positive limitation upon the power of the Legislature to extend the time or renew the corporate existence beyond that term? What consequences are expected to follow upon the expiration of such limitation? Naturally the corporation becomes dissolved, and incapable of longer exercising corporate functions in pursuing and carrying on its business. Its business is to be closed out, its obligations paid, and the assets distributed among its stockholders. These are the results which naturally follow from the mandate of the Constitution, and indicate the intent of the instrument. Would a special act of the Legislature, were such act permissible, which granted to a corporation an existence of 30 years, and contained a provision that from and after the expiration of said term it should continue a further term of 30 years, with all the rights, privileges, and immunities therein granted, without change of corporate or individual rights, stock, or property, be a violation of this provision of the Constitution, so far as the term exceeded 30 years? It seems too plain for argument that it would. What the Legislature is prohibited from doing directly they are prohibited from doing indirectly. The general law under which corporations are formed, together with the articles of association adopted in pursuance

thereof, sometimes called "constating instruments," con-
stitute the charter of the corporation. The language
which the general law for the formation of corporations,
together with the general law for extending the term of
their existence, speaks, according to the construction
placed upon them by the respondents, is this: It says to
the corporations—

"You must limit the time of your existence to 30 years,
for that is the limit placed by the Constitution; but you
may extend this time 30 years longer, if you so resolve
within a year before the thirty-years limit will expire, or
at any time before the dissolution of your corporation
becomes complete, and so on *ad finitum.*"

Is not the constitutional provision rendered nugatory
by such construction? Is not the corporation created for
a longer period than 30 years, and really for an indefinite
period? Does the public know, does a corporator or
stockholder know, the time when the corporation will
cease to exist, and its business be wound up? The lim-
itation upon the legislative power would be useless as
well as purposeless, unless it acts as a limitation upon the
power to renew the corporation, and extend its term of
existence beyond the 30 years. As indicative of the
intent of the people in adopting the Constitution to limit
the duration of corporations not within the exceptions to
30 years, section 9, Art. 19, has already been alluded to.
Equally expressive of that intent is section 8, Art. 15,
which declares that—

"The Legislature shall pass no law altering or amend-
ing any act of incorporation heretofore granted without
the assent of two-thirds of the members elected to each
house, nor shall any such act be renewed or extended.
This restriction shall not apply to municipal corpora-
tions."

When this section is read in connection with the tenth
section, restricting the Legislature from creating corpora-

tions which should thereafter be formed under general laws to a period of existence not longer than 30 years, the intent to prohibit the Legislature from extending such period is apparent, and is as clearly prohibitory as it would have been had there been added to the section the words, "and such time shall not be extended."

The design of the framers of the Constitution was to place all purely private corporations on an equal footing, and to fix a limit of time beyond which they should not continue to exist. This design would be frustrated if authority could be given them to perpetuate their existence by a resolution adopted by a vote of a majority of two-thirds of the capital stock, or by any other device.

In considering the question thus far we have treated the statutes of 1882 and 1887 as expressing an intention to renew corporations which were originally created for the full limit of 30 years. It must be admitted that there is language used in the statute which would justify the inference that it was intended to apply to such corporations. But it is not necessary to give the statutes this construction. And we are bound to give to these enactments such construction, if practicable, as will preserve their force and validity, rather than to avoid them or render them nugatory.

The period for which corporations shall be formed is left with the corporators, within the constitutional limit.

There probably are corporations, and the writer of this opinion has known of some, which have not organized for the full period of 30 years. As applied to such corporations, the statute, within the constitutional limits, is valid, and would authorize them to renew their corporate existence for the remainder of the constitutional limitation.

We do not therefore declare the statute unconstitutional,

73 MICH—21.

but that it does not apply to corporations whose period of existence is fixed by their articles of association to 30 years. They are excluded from its terms, not by its language, but by the Constitution, which limits their creation to the period of time not longer than 30 years. We do not decide, however, that the law of 1882, as amended in 1887, applies to corporations formed previous to the passage of those acts.

Let judgment of ouster be entered against defendants.

The other Justices concurred.