The Chicago, Burlington and Quincy Railroad Company, Appellee, *vs.* C. J. Doyle, Secretary of State, *et al.* Appellants.

*Opinion filed June 18, 1913.*

1. Statutes—*history of legislation may be resorted to to ascertain legislative purpose and intent.* In construing statutes resort may be had to the history of the legislation on the subject to ascertain the purpose and intent of the legislature, and to that end it is not only proper to compare statutes relating to the same subject passed at the same or different sessions of the legislature, but to consider statutes upon cognate subjects although not strictly *in pari materia.*

2. Corporations—*the act of June 9, 1911, concerning extension of charters, applies to corporations formed under the general law.* The act of June 9, 1911, (Laws of 1911, p. 239,) authorizing the extension of charters of corporations for a period not to exceed ninety-nine years, applies to corporations organized under the general Incorporation act.

3. Same—*act of June 9, 1911, did not repeal, by implication, the act of June 7, 1911.* The act of June 9, 1911, (Laws of 1911, p. 239,) concerning the extension of charters of corporations for a period not to exceed ninety-nine years, did not repeal the act of June 7, 1911, (Laws of 1911, p. 470,) amending section 5 of the Railroad and Warehouse act and authorizing the extension of the charters of railroad corporations not to exceed fifty years.

4. Same—*act of June 9, 1911, does not apply to railroad corporations.* The act of June 9, 1911; (Laws of 1911, p. 239,) authorizing the extension of charters of corporations for a period of not to exceed ninety-nine years and providing for the payment of fees to the State, the same as in case of a new incorporation, does not apply to railroad corporations.

5. Same—*act of June 7, 1911, authorizes railroad corporations to extend charters without payment of fees.* The act of June 7, 1911, (Laws of 1911, p. 470,) amending section 5 of the Railroad and Warehouse act, authorizes railroad corporations to extend their charters for a period of not to exceed fifty years, and as such act is silent as to payment of fees to the State no fees are required.

6. Same—*charter extension acts of 1911 are not invalid as special legislation.* The act of June 7, 1911, (Laws of 1911, p. 470,) authorizing railroad corporations to extend their charters for a period of not to exceed fifty years without payment of fees, and the act of June 9, 1911, authorizing other corporations to extend

their charters for a period not to exceed ninety-nine years upon payment of fees, are not invalid as special legislation, as railroads are in a class by themselves, and the legislature may pass laws concerning them which do not apply to other corporations.

7. SAME—*extension of charter is not the creation of a new corporation.* The extension of the charter of a corporation under a statute authorizing an extension, only, is not the creation of a new corporation, and, in the absence of a provision in the statute requiring payment of fees to the State, does not entitle the State to demand fees as in case of the organization of a new corporation.

APPEAL from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding.

P. J. LUCEY, Attorney General, and T. E. DEMPCY, for appellants.

J. A. CONNELL, CHIPERFIELD & CHIPERFIELD, and GRAHAM & GRAHAM, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was a bill filed in the circuit court of Sangamon county by the appellee, the Chicago, Burlington and Quincy Railroad Company, praying that an injunction might issue against C. J. Doyle, as Secretary of State and individually, and others, restraining them from paying into the State treasury certain moneys paid by appellee to said Doyle as Secretary of State. The case was heard on a stipulation of facts, and a decree was entered perpetually enjoining and restraining the parties from paying said moneys into the State treasury and ordering the return of the amount to said company. From that decree this appeal was prayed.

From the allegations of the bill and stipulation of facts it appears that appellee is a railroad corporation organized by virtue of a special charter from the State of Illinois; that this charter was about to expire unless extended as provided by law; that the necessary steps were taken to have the charter extended, but on application to the Secre-

258 – 40

tary of State he refused to accept and file the certificate of
extension and certify to the same unless appellee paid to
him $110,885 in addition to the filing fee of $2 fixed by
statute for filing papers with the said secretary. Appellee
thereupon paid, under protest, the amount demanded and
took from said Doyle a receipt stating that it was so paid,
he agreeing to hold the amount as a special deposit until
January 7, 1913. Appellee contends that it was entitled to
such extension, under the Railroad and Warehouse act,
without such extra payment, and especially under section 5
of that act as amended on June 7, 1911. (Laws of 1911,
p. 470.) Counsel for appellants contend that the extension
must be had under that amendment read in connection with
an act passed June 9, 1911, authorizing the extension of the
charters of corporations in certain cases; (Laws of 1911,
p. 239;) that taking these two last named acts together
would require the payment of the fees demanded by the
Secretary of State, under paragraphs 10*a* and 10*b* of chap-
ter 53 of Hurd's Statutes of 1911, page 1176.

The amendatory act of June 7, 1911, after the proper
heading, provides that section 5 of the Railroad and Ware-
house act "be and the same is hereby amended to read as
follows:

"Sec. 5. No such corporation shall be formed to con-
tinue more than fifty years in the first instance, but any
railroad company formed under any law of the State may
be renewed from time to time, for periods not longer than
fifty years: *Provided,* that three-fourths of the votes cast
at any regular election for that purpose shall be in favor of
such renewal, and those desiring a renewal shall agree to
purchase the stock of those opposed thereto at its current
value.

"Whenever any such election is held by any railroad
company, a certificate, showing the proceedings of the meet-
ing and verified by the president or a vice-president of the
corporation and the secretary thereof, with the seal of the

corporation, shall be filed with the Secretary of State within thirty days after the meeting, and upon the filing of such certificate the duration of such corporation shall thereby be extended, in accordance with the vote of the stockholders, for an additional period not longer than fifty years: *Provided,* in case where such renewal is of any railroad company previously incorporated under a special act of the legislature, then such renewal and extension of such company shall be under and subject to all the provisions of the general laws of this State relating to railroads, and such company shall have such powers only as provided for in this act."

The act of June 9, 1911, reads as follows:

"Sec. 1. That any corporation existing by virtue of any general law of this State, or any corporation hereafter organized by virtue of any law of this State upon the stock plan for a period less than ninety-nine years, at any time before the expiration thereof, may extend the term of its existence beyond the time specified in its original certificate of incorporation, or in any certificate of extension of corporate existence, for a period not to exceed ninety-nine years from date of original incorporation, whenever two-thirds of the stockholders of any such corporation may desire, and it shall be the duty of the board of directors, or managers thereof, to submit the question of such extension to a vote of the stockholders at any annual, or a special meeting of such stockholders to be called and held as herein provided.

"Sec. 2. Such special meeting shall be called by delivering personally or depositing in the post-office, at least thirty days before the time fixed for such meeting, a notice properly addressed to each stockholder, signed by a majority of said directors, or managers, stating the time, place and object of such meeting and a general notice of the time, place and object of such meeting shall also be published within the county wherein the principal office of said corporation is located.

"Sec. 3. At any such meeting the stockholders may vote in person, or by proxy, each stockholder being entitled to one vote for each share of stock held by him, and votes representing two-thirds of all the stock of the corporation shall be necessary for the adoption of the proposed change of the term of corporate duration.

"Sec. 4. If at any regular annual meeting, or at the time and place specified in said notice of a special meeting called for that purpose, the proposition to extend the term of corporate existence be submitted to a vote, and if it shall appear that two-thirds of all the votes represented by the whole stock of such corporation are in favor of the proposition so submitted, a certificate thereof, verified by the affidavit of the president and under seal of said corporation, shall be filed in the office of the Secretary of State, and a like certificate filed for record in the office of the recorder of deeds of the county where the principal business office of such corporation is located. And upon the filing of said certificate and the payment of the same fees as is provided for in the incorporation of a new company, the change proposed and voted for at such meeting as to extending the corporate duration of said corporation shall be and is hereby declared accomplished, in accordance with the vote of the stockholders, and said corporation shall be deemed and taken to be extended in all courts and places whatsoever."

Counsel for appellants insist that these two acts, being passed at the same session of the legislature, only two days apart, and referring, as they do, to the renewal and extension of charters of corporations, must be regarded as being *in pari materia,*—that is, as relating to the same subject matter,—and that they must be taken together and compared when construed. The endeavor should be made always, in construing one or more statutes, to ascertain, by the history of the legislation on the subject, the purpose and intent of the legislature, and to that end it is not only proper

to compare statutes relating to the same subject passed at the same or different sessions of the legislature, but to consider statutes upon cognate subjects though not strictly *in pari materia.* (Sutherland on Stat. Const. sec. 284; 36 Cyc. 1147; *South Park Comrs.* v. *First Nat. Bank,* 177 Ill. 234; *Northern Trust Co.* v. *Palmer,* 171 id. 383.) The first paragraph of section 5 as amended by the act of June 7, 1911, reads the same as section 5 before the amendment. The amendment added the second paragraph. It will hardly be argued that if there had been no amendment of said section 5 the act of June 9, 1911, would repeal it by implication, yet the argument now made that the first section of said act of June 9, 1911, refers to all corporations, and therefore must necessarily include railroad corporations, could have been made with the same force if there had been no such amendment of the said section 5. It seems evident from reading and comparing said act of June 9, 1911, with the other laws bearing on corporations, that it was the chief purpose of the legislature to have said act apply to corporations created under the general Incorporation act. Among other things, it will be noted that section 2 of said general Incorporation act (Hurd's Stat. 1911, p. 558,) authorizes the issuance of a charter not to exceed ninety-nine years, while section 1 of the act of June 9, 1911, provides that any corporation organized by virtue of the laws of this State for a period of less than ninety-nine years may have its corporate existence extended, under the provisions of· said last named act, for a period of not exceeding ninety-nine years. Surely it will not be contended that this last provision would authorize the extension of the charters of railroad companies for any period up to ninety-nine years when section 5 of the Railroad and Warehouse act only authorizes an extension for fifty years. Such a conclusion would require it to be held that section 5 was repealed by implication. The law does not favor the repeal of statutes by implication. Both statutes will remain in force unless

they are so repugnant that they cannot operate together. *People* v. *Raymond,* 186 Ill. 407; *Galpin* v. *City of Chicago,* 249 id. 554.

Not only does said act of June 7, 1911, differ from the act of June 9, 1911, as to the original term for which a corporation may be chartered and the number of years for which the charter can be extended, but the two acts also differ in other particulars. The act of June 7, 1911, requires three-fourths of the stockholders to agree to obtain such an extension, while the later act requires only two-thirds. The first act requires the proceedings to be had at a regular election; the second act provides that the proceedings may be had at the annual or a special meeting. Under the first act the stockholders who favor the renewal must agree to buy the stock of those opposed, at current value; there is no such requirement in the second act. Under the first act there is no provision for voting by proxy; under the second act there is such a provision. Under the first act the extension certificate must be filed within thirty days after the vote; no time limit is provided in the later act. Under the first act there is no provision for recording in a recorder's office; under the second act there is such a provision. Under the first act there is no mention of fees in connection with the extension; under the second act it is required that there shall be the same fees for the extension as for the creation of a new corporation.

Counsel for the State do not contend that any of the provisions of the first act are repealed by the provisions of the later act, but argue that the requirements in the second act as to the payment of fees for the extension of the charter apply to both acts. This argument is based apparently on that clause in the last proviso of said first act which reads: "Then such renewal and extension of such company shall be under and subject to all the provisions of the general laws of this State relating to railroads," etc., and the argument is, that this proviso has the effect of remand-

ing railroad corporations organized under special acts to
the general body of the laws on the subject of renewal and
extension, and of reading into the act of June 9, 1911, the
additional corporations, namely, railroad corporations or-
ganized under special acts.   This, in our judgment, is not
a reasonable construction of this proviso or of those two
statutes taken together.   Corporations are the creatures of
the legislature, and the method of bringing them into exist-
ence or continuing their charter powers must be found in
the statutes and followed with substantial accuracy to en-
title them to perform corporate functions.   The legislature
could, if it saw fit, require railroad corporations to pay the
same fees as other corporations for a renewal of their char-
ters.   But the question here is, what has been required by
the legislature?   The said proviso to the act of June 7, 1911,
does not mean what is contended by counsel for the State.
The office of a proviso ordinarily is to qualify or restrain
or except something from the generality of the enacting
clause.   (*In re Day,* 181 Ill. 73.)   Said section 5, before
this amendment, authorized the renewal from time to time,
for periods not longer than fifty years, of the charter life
of a railroad corporation, whether such railroad corpora-
tion was organized under that act or otherwise.   The pro-
viso in the amendment in the second paragraph was inserted
so that when a railroad incorporated under a special act
obtained a renewal, such railroad would thereafter come un-
der and be subject to the general laws of this State relating
to railroads and have only such powers as are provided for
under the general Railroad act.   Thus this proviso comes
within the rule quoted above and qualifies what was stated
in the body of the section preceding it.   We see nothing in
said act of June 9, 1911, that leads to the conclusion that
that act was intended to apply to railroads, and certainly
nothing in the proviso in section 5 of the act of June 7,
1911, or anything else in said section, would tend to lead
to that conclusion.   On the contrary, considering the two

acts together, it is evident that the legislature intended them to be independent of each other, the first referring only to railroad corporations. It is not necessary here to decide as to the corporations to which said act of June 9, 1911, does apply, it being sufficient to say that it does not apply to railroad corporations.

Counsel for the State further insist that if this construction be put upon the act of June 7, 1911, then such act must be held to be special legislation. With this we can not agree. If a law is general and uniform in its operation upon all persons in like circumstances it is general, in a constitutional sense. "A law general in its character may extend only to particular classes and not be obnoxious to the provisions of the constitution if all persons of the same class are treated alike under similar circumstances and conditions." (*Chicago and Southern Traction Co.* v. *Illinois Central Railroad Co.* 246 Ill. 146.) A law is general, not because it embraces all the governed, but that it may from its terms, when many are embraced in its provisions, embrace all others when they occupy like positions to those who are embraced. Such a law must be based upon some substantial difference between the situation of a class or classes and another class or classes to which it does not apply. (*City of Clinton* v. *Wilson,* 257 Ill. 580, and cases cited.) Whether railroad corporations shall be placed on a different basis from other corporations as to the payment of fees for the extension of their charters is solely for the legislature to determine. The difference between the requirements of the Illinois statutes as to railroad corporations and other corporations is quite evident. In the case of railroad companies the legislature, either directly or through the railroad and warehouse commission, has the power, from time to time, to regulate rates and in this way to fix the limit of their earnings. There is no such regulation as to the earnings of corporations incorporated under the general Incorporation act. They can make such profits

as their business opportunity or skill permits. If the legislature, by putting railroads in a special class as to the fees that must be paid for the renewal of charter powers, has acted in violation of the constitution, then by the same line of reasoning it would be necessary to hold that the law compelling railroad corporations to act under charters lasting only fifty years while other corporations may be permitted to exist for ninety-nine years without a renewal of their charters would be special legislation. This court has repeatedly held that street railway corporations are in such a different class that the twenty-year limitation for a franchise was authorized. The twenty-year provision as to street car companies and the fifty-year provision as to railway companies have always been considered constitutional. (*Allman* v. *Havana, Rantoul and Eastern Railroad Co.* 88 Ill. 521; *Wilder* v. *Aurora Traction Co.* 216 id. 493; *City of Aurora* v. *Elgin Traction Co.* 227 id. 485; *Spalding* v. *Macomb and Western Illinois Railway Co.* 225 id. 585.) The construction we have given to the acts of June 7 and June 9, 1911, does not make either of them unconstitutional, as special legislation.

The further argument is made that the extension of the charter of the railroad corporation under the act of June 7, 1911, is the creation of a new corporation, requiring the payment of fees provided for under said paragraphs 10*a* and 10*b* of said chapter 53 of our statutes, relating to fees. The question whether an extension of the life of a corporation is the continuation of the old or the creation of a new corporation is often one of great importance, and the authorities are not all in harmony. If it is the creation of a new corporation and not the continuation of the old, then the new corporation does not possess the rights and is not subject to the liabilities of the old one, but if the effect is simply to renew or continue an old corporation its identity remains unchanged and its liabilities unimpaired. (10 Cyc. 281, and cases cited.) As long ago as *People* v. *Marshall,*

1 Gilm. 672, this court said (p. 683) : "The distinction between a new charter and the renewal of an old one is fully recognized by authority. The continuance of an old charter is not the creation of a new corporation, and it is said that, in pleading, the latter act need not be noticed, the vitality and authority of the corporation being derived from the former one." Practically to the same effect was *Williams* v. *Bank of Illinois,* 1 Gilm. 667. The doctrine laid down in those cases has never been questioned by this court. In *Ohio Valley Tie Co.* v. *Bruner,* 146 S. W. Rep. (Ky.) 749, the court said : "The general authority throughout the Union upholds the right of a corporation to extend its life by amendment. * * * Such an extension is not the formation of any new or different corporation. Its affairs are not wound up or liquidated; there is no distribution of its assets; there is no change in the personnel of the stockholders or their liability; there is no alteration or break in the continued existence of the corporation upon which the organization tax has once been paid." In *Attorney General* v. *Perkins,* 73 Mich. 303, the court, in discussing this question, said (p. 316) : "No change is contemplated in the property, rights of action, liabilities, officers or stockholders. Certainly such results cannot follow the expiration of an existing corporation and the creation of a new one. There is nothing new about it except the term of existence. There remain the old name, the assets, the old liabilities, the old officers and the old stockholders." In Purdy's Beach on Private Corporations (vol. 3, sec. 1247,) the author says: "Extension, revival or renewal of the corporate charter for an additional period when its term of existence has expired or is about to expire may be by special act or by general law. Such an act does not create a new corporation but merely revives and continues the old one under its original charter, without any re-organization, interruption or change, and without affecting its powers or identity as a corporation or its property or other rights or

contract liabilities." The extension of a charter is not the creation of a new charter. It is the same charter with a renewed lease of life, under which the organization may be kept up. See to the same effect, among other authorities: *Black River Improvement Co.* v. *Holway*, 87 Wis. 584; *St. Philip's Church* v. *Zion Presbyterian Church*, 23 S. C. 297; *Wallace* v. *Loomis*, 97 U. S. 146; Clark on Corporations, (2d ed.) sec. 39. This court, in the recent case of *Chicago and Eastern Illinois Railroad Co.* v. *Doyle*, 256 Ill. 514, had under consideration the question whether a merger of several railroads was the creation of a new corporation,—a question very similar to the one raised here,—and held, consistently with the weight of authority in other jurisdictions as well as with the earlier cases in this State, that the merger of existing corporations does not necessarily organize or create a new corporation. Plainly, the amendment of June 7, 1911, did not contemplate the creation of a new corporation but the extension of the charter life of an old corporation.

The argument that it is unjust and unwise to extend the charter of railroad corporations without requiring the payment of additional fees is one that should be addressed to the legislature. With the wisdom or unwisdom of laws, unless they involve constitutional questions, the courts have nothing to do.

The decree of the circuit court will be affirmed.

*Decree affirmed.*