STEELE, WEDELES CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 10215.   Promulgated March 28, 1928.

*Donald Horne, Esq.*, and *Charles Green Smith, Esq.*, for the petitioner.

*Arthur H. Fast, Esq.*, and *Julian G. Gibbs, Esq.*, for the respondent.

## OPINION.

TRAMMELL: Errors alleged in the petition and not abandoned at the hearing are as follows: (1) That the petitioner's invested capital for 1918 was calculated without including any amount representing the value of its good will and other intangible assets; (2) the petitioner's invested capital for 1918 was calculated without including as paid-in surplus the excess of the fair market value of the leasehold interest acquired for stock in 1910 over the actual cash paid for the leasehold interest by petitioner's predecessor in 1907; (3) the petitioner's invested capital for 1918 was reduced by the amount of its income and war excess profits taxes for the year 1917 prorated, that is, total tax, $94,091.66, prorated from June 15, 1918, is $51,557.07, which amount was deducted by the respondent from the petitioner's invested capital for 1918; (4) the petitioner was allowed a deduction from gross income for 1918 for amortization of leasehold interest based on actual cost to petitioner's predecessor, $25,000, instead of on the fair market value of said leasehold interest on March 1, 1913, $120,000. Amortization of said leasehold interest was calculated on the basis of its full life from 1907 instead of on its remaining life from March 1, 1913; (5) petitioner's application for assessment under the provisions of sections 327 and 328 of the Revenue Act of 1918 for the taxable year 1918 was denied; (6) the time within which the law permitted the respondent to assess additional income and/or profits taxes against the petitioner for the year 1918 has expired.

With respect to the first allegation of error, the petitioner contends that its invested capital should be increased on account of the intangible property, including good will, acquired from its predecessor partnership in 1885.

From a consideration of all the evidence in the case we are of the opinion that the intangible property acquired for stock had an actual cash value of at least $140,000 at the time acquired by the petitioner in 1885. The $300,000 par value of stock issued for the assets both tangible and intangible should be allocated to each class of assets in accordance with the method set out in *St. Louis Screw Co.*, 2 B. T. A. 649. The petitioner is entitled to include in invested capital subject

to the statutory limitations the amount determined as applicable to the intangible property.

With respect to the allegation that the respondent erred by computing invested capital for 1918 without including as paid-in surplus the excess of the fair market value of a leasehold interest acquired for stock in 1910 over the actual cash paid for the leasehold interest by petitioner's "predecessor" in 1907, the petitioner concedes that it was incorporated in 1885 for a period of 25 years and that its charter was renewed in 1910. It does not appear from the record that any change was made in the petitioner's organization or status when its charter was renewed.

In considering the question of whether an extension of a charter was the creation of a new corporation, the Supreme Court of Illinois, in *Chicago, B. & Q. R. Co.* v. *Doyle*, 258 Ill. 624; 102 N. E. 260, said:

The question whether an extension of the life of a corporation is the continuation of the old or the creation of a new corporation is often one of great importance, and the authorities are not all in harmony. If it is the creation of a new corporation and not the continuation of the old, then the new corporation does not possess the rights and is not subject to the liabilities of the old one; but if the effect is simply to renew or continue an old corporation, its identity remains unchanged and its liabilities unimpaired. 10 Cyc. 281, and cases cited. As long ago as *People* v. *Marshall*, 1 Gilman 672, 683, this court said: "The distinction between a new charter and the renewal of an old one is fully recognized by authority. The continuance of an old charter is not the creation of a new corporation and it is said that in pleading the latter act need not be noticed, the vitality and authority of the corporation being derived from the former one." Practically to the same effect was *Williams* v. *Bank of Illinois*, 1 Gilm. 667. The doctrine laid down in those cases has never been questioned by this court. In *Ohio Valley Tie Co.* v. *Bruner*, 148 Ky. 358, 146 S. W. 749, the court said: "The general authority throughout the Union upholds the right of a corporation to extend its life by amendment. * * * Such an extension is not the formation of any new or different corporation. Its affairs are not wound up or liquidated; there is no distribution of its assets; there is no change in the personnel of the stockholders or in their liability; there is no alteration or break in the continued existence of the corporation upon which the organization tax has once been paid." In *Attorney General* v. *Perkins*, 73 Mich. 303, at page 316, 41 N. W. 426, at page 429, the court in discussing this question, said: "No change is contemplated in the property, rights of action, liabilities, officers, or stockholders. Certainly such results cannot follow the expiration of an existing corporation and the creation of a new one. There is nothing new about it, except the term of existence. There remains the old name, the assets, the old liabilities, the old officers, and the old stockholders." In 3 Purdy's Beach on Private Corporations, 1247, the author says: "Extension, revival, or renewal of the corporate charter for an additional period when its term of existence has expired or is about to expire may be by special act or by general law. Such an act does not create a new corporation but merely revives and continues the old one under its original charter, without any reorganization, interruption, or change, and without affecting its powers or identity as a corporation or its property or other rights or contract liabilities." The extension of a charter

is not the creation of a new charter. It is the same charter with a renewed lease of life, under which the organization may be kept up.

In view of the foregoing, we are of the opinion that the renewal of its charter in 1910 does not entitle the petitioner to include the lease in invested capital at a greater value than if its charter had not been renewed, even if it be conceded that the lease had the value contended by the petitioner in 1910 when the charter was renewed.

The evidence shows that the leasehold which was acquired from the Sibley Warehouse & Storage Co. under the assignment made on August 1, 1907, was not acquired for stock but for cash in the amount of $25,000, and the petitioner's agreement to erect on the premises within two years a building to cost approximately $200,000. The original lease provided for the purchase by the original lessors of any buildings or improvements standing on the land at the end of the lease. It not having been acquired for stock and not having been contributed or paid in by a stockholder there is no basis for a paid-in surplus with respect thereto in 1907 when acquired. We see no basis for any *earned surplus* as contended for by the petitioner with respect to the difference between the cost of the lease and its market value either in 1907 or in 1910. The petitioner did not realize any gain or profit or derive any earnings from the acquisition.

In its brief the petitioner raises the contention for the first time that it is entitled to include in its earned surplus an amount of $119,000 representing the expenditures made by the Chicago Warehouse & Terminal Co. in the construction of those portions of the building which it leased. This however was not an issue in the case, and the pleadings were not amended or offered to be amended to raise it. We therefore have not considered this question.

With reference to the petitioner's allegations that the respondent erred in reducing its invested capital for 1918 by the prorated amount of income and profits taxes for 1917, it appears that the respondent's action is in accordance with the provisions of section 1207 of the Revenue Act of 1926 and his action is therefore approved. In the recomputation of the deficiency for 1918, it becomes necessary to determine the amount of the 1917 tax liability in order to determine the amount to be deducted from 1918 invested capital with respect thereto. The tax liability for 1917 should be determined by giving effect in the invested capital to good will acquired in 1885 and the value of the lease on March 1, 1913, for depreciation purposes as herein determined.

With respect to the allegation that the respondent erred in allowing a deduction from income for amortization of leasehold based on the actual cost of $25,000 and the remaining life of the lease from 1907, instead of on the fair market value of the lease on March 1, 1913, and its remaining life from that date, it is our opinion that the

petitioner is entitled to an exhaustion allowance based upon the value of the leasehold on March 1, 1913, spread over the remaining life of the lease, which expires on March 31, 1993.

In support of its contention that the leasehold interest acquired by assignment from the Sibley Warehouse & Storage Co. had a value of $120,000 on March 1, 1913, the petitioner introduced the testimony of a witness who for over 40 years has been engaged in the real estate business, dealing almost exclusively with property located in the central business district of Chicago. This witness has bought and sold, as well as appraised, many millions of dollars worth of property. He was president of the Chicago Real Estate Board in 1912, has served on the appraisals committee of that board, and had a knowledge of real estate values in that vicinity. This witness was familiar with the premises not only in 1913, but also prior to the time the petitioner acquired a lease thereon. From a consideration of his testimony in connection with the other facts in the case, we are of the opinion that the value of the leasehold on March 1, 1913, was at least $120,000 in excess of the rentals payable thereunder.

The petitioner introduced no evidence directed to the question of whether the respondent erred in denying its application for a determination of its profits tax under the provisions of section 328 of the Revenue Act of 1918, and made no reference thereto in its brief. The action of the respondent is therefore approved.

The remaining contention of the petitioner is that the time within which the law permitted the respondent to assess additional income and profits tax against it for the year 1918 has expired.

While no testimony was introduced with respect to the so-called "waiver," the pleadings set forth that a "waiver" was filed which purported to extend the period of limitations until December 31, 1925. It was alleged in the petition that the "waiver" was ineffectual because "the taxpayer is without authority to extend the time provided by statute within which the Commissioner may assess a tax. Congress alone can extend the time and has not done so." In its brief it is contended that the limitation was not extended because the "waiver purported to waive only the statute as to tax imposed under existing provisions of law, and did not waive the effect of new provisions of a new statute, affecting the computation, assessment and collection of such amount of tax." We are not impressed with the reasons assigned by the petitioner. The statute specifically provides for the extension of the period of limitations within which taxes might be assessed and collected by consents in writing. It is not alleged or shown that the statute was not followed in the execution of the so-called "waiver." In this case the petitioner has not shown that the period of limitation had expired.

288

The period within which assessment could be made had not expired when the notice of the deficiency was mailed to the petitioner. The period for assessment and collection is therefore not barred.

> *Judgment will be entered on 15 days' notice, under Rule 50.*