IN RE APPLICATION OF THE BANK OF COMMERCE FOR CHANGE OF NAME.

[No. 18,651. Filed May 23, 1899. Rehearing denied Nov. 16, 1899.]

CONSTITUTIONAL LAW.—*Special Legislation.*—*Corporations.*—*Insurance Companies.*—The act of 1865 (Acts 1865, p. 110, Spec. Ses.), amending the act of 1836 for the incorporation of the Indianapolis Insurance Company by striking out the limitation on corporate duration so that the company should be "A body corporate with perpetual succession," and the act of 1883 (Acts 1883, p. 135) providing that all existing private corporations organized by special act or charter, passed before the present Constitution took effect, should continue thirty years after the passage of the act, and where such special act or any amendment or supplement to such act gives the right to exist for a longer period, or perpetually, such corporation should continue for such longer period, or perpetually, as so given, are violative of article 11, section 13, of the Constitution, providing that "Corporations other than banking shall not be created by special act, but may be formed under general laws," and of article 1, section 23, which provides that "The General Assembly shall not grant to any citizen or class of citizens privileges or immunities which upon the same terms shall not equally belong to all citizens."

From the Marion Circuit Court. *Affirmed.*

*A. C. Harris* and *Augustin Boice*, for petitioner.

*C. S. Wiltsie*, Prosecuting Attorney, *W. N. Harding* and *A. R. Hovey*, for State.

BAKER, J.—"An act to incorporate the Indianapolis Insurance Company" was passed on February 8, 1836. In section 1 it was provided that the company should be "a body politic and corporate with perpetual succession * * * for the period of fifty years from and after the passage of this law". Section 2 gave the corporation power to insure all kinds of property, to make all kinds of insurance upon life, to lend money, etc. Section 3, among other things, made its office one of discount and deposit. Acts 1836 (Spec. laws), p. 191. The corporation was duly organized and began operations. At the special session in

1865, section 1 was amended by striking out the limitation on corporate duration so that the company should be "a body corporate with perpetual succession". Acts 1865, Special Session, p. 110. This amendment was accepted at once by the stockholders and directors. Through proceedings in the Marion Circuit Court the name of the company was changed to "The Bank of Commerce" on December 7, 1875. An act was passed on April 2, 1881, recognizing the change of name and amending certain sections of the act of 1836 relating to liability of stockholders. On March 6, 1883, the legislature passed "An act establishing provisions respecting private corporations created and existing at and before November 1, 1851". Acts 1883, p. 135. This statute enacts "That each and every private corporation now existing and which was created and organized by and under a special act or charter passed before the present Constitution of the State took effect shall be and continue a corporation thirty years after the passage of this act: Provided, that where the special act by and under which any such corporation was created, or any amendment of or supplement to such act, gives the right to continue and exist for a longer period or perpetually, such corporation shall continue for such longer period or perpetually, as so given". The provisions of this act were accepted by the stockholders and directors. In January, 1898, the company determined to devote its attention to building up a business of writing "old line" life insurance and concluded that the name "Columbia Life Insurance Company" was preferable to "The Bank of Commerce". On February 7, 1898, the company accordingly filed in the Marion Circuit Court its application for change of name, setting out the foregoing facts. The law requires prosecuting attorneys to resist the granting of applications of this kind. §5864 R. S. 1881 and Horner 1897, §7812 Burns 1894. The prosecutor answered that the acts of 1865 and 1883, under which the applicant claimed a perpetual special charter, were in conflict with the following provi-

sions of the present Constitution in force since November 1, 1851: "Article 1, §23. The General Assembly shall not grant to any citizen or class of citizens privileges or immunities which upon the same terms shall not equally belong to all citizens. Article 4, §23. In all the cases enumerated in the preceding section and in all other cases where a general law can be made applicable, all laws shall be general and of uniform operation throughout the State. Article 11, §13. Corporations other than banking shall not be created by special act, but may be formed under general laws." Demurrer to answer was overruled, and judgment of ouster followed the bank's refusal to plead further.

If it would have been possible, in view of the change that was sought and the declared purpose of the company, for the applicant to have separated in its petition and the proceedings based thereon the banking from the insurance features of the charter, the right has been waived; and the only question assigned and discussed pertains to the power of the legislature under the present Constitution to grant a new term of existence to an insurance company organized under a special charter prior to November 1, 1851, and existing by virtue thereof on and after that date.

Whether or not a general law can be made applicable to a subject-matter not included in §22 of article 4 is held to be a question of legislative judgment. *Gentile* v. *State*, 29 Ind. 409; *City of Indianapolis* v. *Navin*, 151 Ind. 139, 41 L. R. A. 337, and cases collated on page 155. But neither a general nor a special law can stand that involves the exercise of a power withdrawn from the General Assembly by the Constitution. So it is not necessary to consider whether or not the act of 1883 was in reality an aggravated form of special legislation; and the question remains, as stated, to be determined from §13 of article 11 and §23 of article 1.

There is this difference in the rules of construction of the federal and the state constitutions: The congress may do nothing that is not permitted expressly or by clear impli-

cation; the legislature may do anything that is not forbidden expressly or by clear implication. *State, ex rel.* v. *Menaugh,* 151 Ind. 260; *Sharpless* v. *Mayor of Philadelphia,* 21 Pa. St. 147, 160; *Bourland* v. *Hildreth,* 26 Cal. 161, 183; *Southern Pacific R. Co.* v. *Orton,* 6 Saw. 157, 32 Fed. 457.

Attention is called to the fact that since November 1, 1851, fifty-two acts have been passed amendatory of special charters granted under the old Constitution; and the contention is made that this practical construction of the Constitution by the legislature is conclusive by reason of the continued acquiescence of the people and the other departments of the State government. It is not conclusive; but it may be highly influential, depending in degree upon the similarity of the question presented to the court to the one acted upon by the legislature consistently, repeatedly, and throughout a long period of time, with such acquiescence. *City of Indianapolis* v. *Navin,* 151 Ind. 139, 147; *City of Terre Haute* v. *Evansville, etc., R. Co.,* 149 Ind. 174, 186, 37 L. R. A. 189. Nearly all of those amendatory acts relate to the powers of corporations to be exercised during the term of existence originally granted. Only four of them purport to grant a new term of existence. Questions concerning the legislature's right to regulate by amendment the exercise of powers of existing corporations would naturally arise the moment the corporations undertook to exercise their powers as amended upon other persons; and cases of the kind have been before this court. But questions concerning the legislature's right to grant by amendment a term of corporate existence beyond the term originally granted would naturally not arise during the unquestionable term; and no case of the kind has been before this court until now. The legislative action and the alleged acquiescence can be allowed herein but little if any force.

The bank contends that the case of *City of Indianapolis* v. *Navin, supra,* is controlling in principle. The question

involved was the constitutionality of the act of March 6, 1897, (Acts 1897, p. 201), regulating the fares to be charged by certain street railway companies that had been or might be organized under the act of 1861, Ch. 41 R. S. 1881 and Horner 1897, Ch. 44 Burns 1894. It was in reference to that question only that the court said (p. 147): "Section 13 of article 11 of the constitution means that after it took effect on November 1, 1851, the legislature should have no power or authority to create, originate or bring into existence by special act a new corporation where none had previously existed. * * * It is one thing to create a corporation, bring it into existence, and quite another, as an existing corporation, to regulate its conduct and relations as to other corporations and persons." The court was concerned, not with the right to grant a new term of corporate life, but merely with the right to regulate the exercise of powers during the original term; and, after reviewing many decisions, the court approved Morawetz's limitation upon the legislative right to confer new corporate franchises under the guise of regulation (p. 153): "It was, however, correctly said in Morawetz on Corporations, §12: 'But it is plain that a constitutional provision can not be avoided and practically annulled by a subterfuge. A special law, altering the charter of an existing corporation and practically changing it, must therefore be deemed a violation of a constitutional prohibition against the creation of corporations by special act. If this were not so, organizations formed under the general laws might be treated merely as the rough material out of which corporations might afterwards be fashioned at pleasure, under special acts of the legislature, and the constitutional prohibition would become an empty form.' " To the same effect is Thompson on Corporations, §585 : "There is no doubt that such a constitutional provision ought to be construed as restraining the power of the legislature to amend existing special charters in any way so as to enlarge the powers or privileges thereby

conferred. It has been held that they do not [it does not] prohibit the legislature from passing special acts regulating existing corporations in the exercise of the powers already conferred upon them by special laws."

The bank further relies upon the cases of *Southern Pacific R. Co.* v. *Orton*, 6 Saw. 157, 32 Fed. 457; *St. Joseph etc., R. Co.* v. *Shambaugh*, 106 Mo. 557, 17 S. W. 581; *Wallace* v. *Loomis*, 97 U. S. 146; *Mason* v. *Perkins*, 73 Mich. 303, 41 N. W. 426; *Cotton* v. *Mississippi, etc., Co.*, 22 Minn. 372; *Frostburg Mining Co.* v. *Cumberland, etc., R. Co.*, 81 Md. 28, 31 Atl. 698; *Black River, etc., Co.* v. *Holway*, 87 Wis. 584, 59 N. W. 126.

In *Southern Pacific R. Co.* v. *Orton*, 6 Saw. 157, the facts sufficiently appear in this quotation from page 185: "But it is insisted that this act was passed in violation of the provisions of §31 of article 4 of the constitution of California, which reads: 'Corporations may be formed under general laws, but shall not be created by special act, except for municipal purposes.' After a careful consideration of the question, I am myself unable to perceive wherein that portion of the act, at least, which authorizes the company to change the line of its road, and to accept the grant made by, and to build the road provided for in the act of congress, is in contravention of this provision of the constitution. It is unnecessary to consider the provision of this act authorizing the corporation to file amended articles of association, for if that be conceded to be in excess of the legislative power, it can be separated from the others, and does not vitiate the other provisions. I do not perceive that any amendment of the articles was necessary, for the corporation was already formed or created—was already in existence with all the essential faculties that go to make up a corporation for building a railroad; and the act authorizing the change of line and acceptance of the congressional grant

with its conditions, only granted to an existing person permission to do a thing which had no necessary relation to the corporate grantee, and was not at all essential to the existence of the legal entity created by law, or to any other person, natural or artificial." It was in reference to a condition that "was not at all essential to the existence of the legal entity created by law" that Sawyer, C. J., said: "The only prohibitory words are that corporations of the class in question 'shall not be created by special act'. The word, create, has a clear, well-settled, and well-understood signification. It means to bring into being, to cause to exist, to produce, to make, etc. To my apprehension, it appears to be one thing to create, or bring into being, a corporation, and quite another to deal with it as an existing entity, a person, after it is created, by regulating its intercourse, relations and acts as to other existing persons, natural and artificial". The circuit judge proceeds to consider what is "essential to the legal entity" (p. 188): "The right to be a corporation is itself a separate, distinct and independent franchise, complete within itself. And a corporation having been created, enjoying this franchise, may receive a grant and enjoy other distinct and independent franchises, such as may be granted to and enjoyed by natural persons; but because it enjoys the latter franchises, they do not, therefore, constitute a part of the distinct and independent essential franchise—the right to be a corporation. They are additional franchises given to the corporation, and not parts of the corporation itself—not of the essence of the corporation."

*St. Joseph, etc., R. Co.* v. *Shambaugh,* 106 Mo. 557. The Missouri constitution of 1865 forbade the revival or reënactment of special charters except under certain circumstances. In regard to the alleged violation of this provision, the court said: "On this record the company was an existing one with perpetual succession at the date of the alleged renewing act. Again, there is nothing to show that the company was not organized and did not commence business within

the time specified in the above section of the constitution." The constitution also prohibited the creation of private corporations by special acts. An act of 1866, amending the railway company's special chartering act of 1857 by extending the time for the construction of the road, was held not to be in contravention of the constitutional prohibition.

The question under consideration in this appeal was not involved in *Wallace* v. *Loomis*, 97 U. S. 146. It was held that the inhibition of the Alabama constitution against the creation of corporations by special acts does not forbid the legislature from passing a special act changing the name of an existing railroad corporation and giving it power to purchase additional property. "We are unable to see anything in this legislation repugnant to the constitutional provision referred to. That provision can not, surely, be construed to prohibit the legislature from changing the name of a corporation, or from giving it power to purchase additional property; and this was all that it did in this case. No new corporate powers or franchises were created."

*Mason* v. *Perkins*, 73 Mich. 303. Perkins and others were claiming the right to act as a corporation, the Pewabic Mining Company. The attorney-general filed an information in the nature of *quo warranto*. The constitution of Michigan, which took effect January 1, 1851, contains these provisions: "Article 15, §1. Corporations may be formed under general laws, but shall not be created by special act, except for municipal purposes. Article 15, §8. The legislature shall pass no law altering or amending any act of incorporation heretofore granted without the assent of two-thirds of the members elected to each house, nor shall any such act be renewed or extended. This restriction shall not apply to municipal corporations. Article 15, §10. No corporation, except for municipal purposes, or for the construction of railroads, plank roads and canals, shall be created for a longer time than thirty years. Article 19, §9. The charters of the several mining corporations may be

modified by the legislature in regard to the term limited for
subscribing to stock, and in relation to the quantity of land
which a corporation shall hold, but the capital shall not be
increased, nor the time for the existence of charters ex-
tended." In 1853 the legislature passed a general law for
the organization of mining and manufacturing companies,
the term of existence not to exceed thirty years. The Pe-
wabic Company was organized under this act on April 4,
1853. In 1882 the legislature passed "an act to provide for
*renewing* the incorporation of companies organized for min-
ing and manufacturing purposes" for a term not exceeding
thirty years by a vote of two-thirds of its capital stock at a
regular or special meeting to be held within one year im-
mediately preceding the expiration of the original term.
The respondents, in 1888, claimed corporate existence by
virtue of proceedings of the stockholders under the act of
1882. It was held that §9 of article 19 and §8 of article 15
of the constitution did not apply to the construction of the
act of 1882 because the Pewabic Company was organized
under the general law of 1853; that the act of 1882 in terms
related to the *renewal* of the incorporation of existing com-
panies and not to the *creation* of new companies, and there-
fore §1 of article 15 was inapplicable; and finally that the
act of 1882, providing for the *renewal* of existing corpora-
tions for a second term of thirty years, was in contravention
of §10 of article 15 of the constitution which forbade the
*creation* of corporations for a longer time than thirty years.
Whether or not the last holding that an extension of life is
a creative act overthrows the preliminary assertion to the
contrary, it may not be profitable to discuss. Benefit, how-
ever, may be derived from noting the grounds upon which
the final determination was reached and upon which the
decision was based. "As grants of power to the legislature
may be found from implications arising from express grants,
so limitations upon legislative power may be found from
implications arising from express limitations in the consti-

tution. * * * Such declaration that 'no corporation, except' etc. 'shall be created for a longer time than thirty years', is equivalent to a mandate that thus long, and for no longer time, shall any corporation be created. Is not such mandate a direct and positive limitation upon the power of the legislature to extend the time or renew the corporate existence beyond that term?" The respondents were contending that an extension of time was not a creation; that the legislature was merely prevented from *creating* corporations with a term of life exceeding thirty years; that. the Pewabic Company was already created and in existence in 1882; that the legislature was not forbidden to amend the governing law in relation to the powers of existing corporations; that it is one thing to create a corporation and quite another to deal with an existing corporation, etc., etc. And the court answered: "Is not the constitutional provision rendered nugatory by such construction? Is not the corporation created for a longer period than thirty years, and really for an indefinite period? Does the public know, does a corporator or stockholder know the time when the corporation will cease to exist and its business be wound up? The limitation upon the legislative power would be useless as well as purposeless, unless it acts as a limitation upon the power to renew the corporation and extend its term of existence beyond the thirty years."

In §8 of article 15 of the Michigan constitution the clear distinction between the legislature's right to regulate by amendment the exercise of powers of existing corporations during their originally granted terms and the legislature's right to grant by amendment a term of corporate existence beyond the term originally granted plainly appears in the antithesis that permits the "alteration or amendment" of the preëxisting special charters and forbids the "renewal or extension" thereof. If the people of Michigan understood the use of words, the renewal or extension of an old charter could not pass muster as an alteration or amendment.

In *Cotton* v. *Mississippi, etc., Co.*, 22 Minn. 372, the company's original charter was granted in 1857 "for the period of fifteen years". The Minnesota constitution of 1857 provided: "No corporation shall be formed under special acts except for municipal purposes". In 1867 the original charter was amended by striking out the words "for the period of fifteen years" so as to leave the term of corporate existence unlimited, and was also amended so as to change the form of procedure in appropriation of lands. Both points were disposed of in these words: "In making these amendments the legislature did not, as plaintiff contends, exceed its authority, since neither of the amendments falls within that provision of our constitution which prohibits the formation of corporations under special acts." No distinction in character between the amendments was made.

*Frostburg Mining Co.* v. *Cumberland, etc., R. Co.*, 81 Md. 28. The Withers Mining Company was chartered in 1848 for a period of thirty years. Its name was afterwards changed to the "Frostburg Mining Company". In 1878 the legislature passed an act extending the charter for thirty years. The Maryland constitution of 1867 provided: "Corporations may be formed under general laws, but shall not be created by special act except for municipal purposes and except in cases where no general laws exist providing for the creation of corporations of the same general character as the corporation proposed to be created." The Withers Company was not within the exceptions. After examining the act the court said: "It is clear, therefore, that the object of the act of 1878 was merely to revive and extend the charter of the Withers Company for a period of thirty years, and by no fair rule of construction can it be said to have created a new corporation." The primary meaning of "revive" is to "give life to again". If it is a creative act to give life to dead matter once, it is no less a creative act to give life again to the same matter when it becomes dead.

In the word "revive" the syllable "re" indicates the use of old matter and the syllable "vive" means "to give life to", which is one of the primary meanings of the word "create". The quality of the act inheres in the giving of life, not in the material that is vivified.    Nor is the quality of the act changed by repetition.    It is the court, not the constitution, that speaks of the vivification of *new* material.

In *Black River Improvement Co.* v. *Holway*, 87 Wis. 584, the company was chartered March 1, 1864, for twenty-five years.    In 1866 the charter was amended to give the company existence for twenty-five years from May 25, 1866. In 1882 the legislature passed an act to continue the life of the company for twenty-five years from March 1, 1889. The Wisconsin constitution of 1848 provided: "Corporations without banking powers or privileges may be formed under general laws, but shall not be created by special act except for municipal purposes and in cases where in the judgment of the legislature the objects of the corporation can not be attained under general laws." In the original charter the legislature stated that the objects of the corporation could not be attained under general laws. In 1871 the constitution was amended so as to prohibit the legislature from "enacting any special or private laws for granting corporate powers or privileges except to cities". The court said: "The original charter, as it had been amended, was in full force at the time Ch. 263, Laws of 1882, was enacted. That act did not create a new corporation in any sense. It merely prolonged the life of an existing corporation which then had nine years more to run. It in effect amended the existing charter by striking out the date at which it was to expire and in its place inserting a different date. Under the power reserved in the constitution itself, the legislature were expressly authorized to alter or repeal that charter. Manifestly they made no attempt to repeal it nor to cut down its powers. They did undertake to alter it by providing that it should not expire until a more remote date. We can not say

that they did anything more than to alter it. Its name and identity and corporate powers continued after the enactment of Ch. 263, Laws of 1882, substantially the same as before. By it there was no granting of corporate powers or privileges *de novo.* It was a mere alteration or change in existing powers." The court said: "That act did not create a *new* corporation in any sense", which was true as to material, because the old was used. But what was the quality of the act? Did it not give life to a corporation? The court apparently gives weight to the fact that at the time the act in question was passed the corporation "had nine years to run". Whether the act was passed nine years or nine seconds before the expiration, or breathing-out, of life originally given by the creative power, the act of giving life could not operate, by the very force of the term, until there was dead matter to give life to. The court further upholds the act by virtue of the legislature's reserved power of altering charters. The powers of the corporation, that is, all of its capacities for dealing with others, were unchanged. The only grant in the act was the privilege to certain persons to do business as a corporation after the termination of their present privilege.

The four cases last above referred to are the only ones cited by counsel on either side that go to the question of the legislature's right, under the constitutional prohibition of the creation of corporations by special acts, to extend the life of companies specially chartered before the limitation existed; and the numerous cases collated by the prosecutor, dealing with the question of the legislature's right, under the guise of regulation, to confer powers different from or additional to those originally granted, are not sufficiently germane to the issue to warrant a discussion of them.

To determine whether or not the extension of an old special charter is violative of the present Constitution, it is necessary to ascertain exactly what a legislature does in creating business corporations by special laws. If the ac-

tion in granting a new special charter and in extending an old special charter is found to be identical in essence, and if the mischief intended to be remedied is the same, the cases are equally offensive. The legislature can not produce a corporation out of nothingness in the Genesitic sense of creating the heavens and the earth; nor bring a corporation into being in the generative sense; nor give life to a corporation in the sense in which life is contradistinguished from matter; nor make, produce, be the cause or occasion of,—in short, create, strictly within the lexicographical definitions,—any private corporation for gain. For, although Webster gives *renew* as one of secondary significations of *create*, the active agencies in the formation or renewal of the private corporation for business purposes are the persons who desire to conduct their gainful enterprises through the corporate form; and the legislature can do nothing towards the creation or extension of the corporation beyond granting the State's permission to the interested persons to carry on their proposed business through the agency of a corporation. The granting of leave to do business as a corporation is the essential thing; the nature of the business and the mode of doing it are incidental. As long as the license lasts, the interested persons do not need another. When the license ends, the special privilege ends. To grant leave to certain persons to act as a corporation, who have not conducted business together before, and to grant leave to certain persons to act as a corporation, who have been or are conducting business together through a corporate organization, are identical in essence. Prior to 1851 the legislature granted numerous special charters. The citizens were not on an equality in doing business. That was one of the vices the new Constitution was intended to put an end to. It would but intensify the wrong if citizens who have no old charters may not go before the legislature and secure special privileges, while persons who have, may. The trafficking in old charters illuminates the evil.

Legislation granting a new term of life to corporations organized under old special charters is also repugnant to §23 of article 1 of the Constitution. The legislature would be granting to particular citizens privileges and immunities which upon the same terms would not belong to all citizens. It is necessary that legislation be classified; but the basis of the classification must inhere in the subject-matter. The legislature may not grant one set of men the privilege of discounting commercial paper at twelve per cent., while bankers in general are restricted to eight; and it may not confer upon particular citizens the privilege (private right) of writing any and all sorts of insurance upon property and life without supervision or safeguard, while insurance companies in general are impeded by legal limitations from doing likewise. If it were not for the special privileges and immunities contained in the old charter, it is to be presumed that the persons interested in this appeal would have been content to conduct their insurance business under the general laws.

Judgment affirmed.

## ON PETITION FOR REHEARING.

BAKER, J.—Counsel urge that the judgment is in conflict with several provisions of the Constitution of the United States. These questions were not presented, nor hinted at, in the briefs or oral argument on which the cause was submitted for decision. Counsel thereby waived the questions; and the waiver precludes any inquiry by this court into the soundness of their present contentions. *Johnson* v. *Jones*, 79 Ind. 141; *Manor* v. *Board, etc.*, 137 Ind. 367, and cases cited on page 394. Petition overruled.