The **INDIANA DEPARTMENT OF INSURANCE and Sally McCarty, Commissioner of the Department of Insurance of the State of Indiana, Appellants–Defendants,**

v.

**VERNON GENERAL INSURANCE COMPANY, Appellee–Plaintiff.**

No. 49A02–0108–CV–547.

Court of Appeals of Indiana.

March 10, 2003.

Steve Carter, Attorney General of Indiana, David L. Steiner, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellants.

Kathleen I. Lee, George T. Patton, Jr., Robert B. Clemens, Bose, McKinney & Evans, LLP, Indianapolis, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellants–Defendants, the Indiana Department of Insurance (the Department) and Sally McCarty (McCarty), Commissioner of the Department of Insurance of the State of Indiana (collectively IDOI),
appeal the trial court's order in favor of Appellee–Plaintiff, Vernon General Insurance Company (Vernon) and against IDOI, granting further relief based on the declaratory judgment issued in 1942.[1]

We affirm.

### ISSUE

■ The IDOI raises two issues on appeal, which we consolidate and restate as follows: whether Vernon is subject to the jurisdiction of, or regulation by, the IDOI under the provisions of Ind.Code § 27–8–4–1 *et. seq*, in contravention with the provisions of its 1851 special charter, the 1942 Declaratory Judgment, and the 2001 Order Granting Further Relief Based on Declaratory Judgment.

### FACTS AND PROCEDURAL HISTORY

On February 13, 1851, shortly before the adoption of the current Indiana Constitution on November 1, 1851, Vernon was granted a special charter of incorporation when our legislature passed Chapter CCCVI of the Local Laws of the Acts of 1851 (Acts of 1851). The special charter granted Vernon the right to engage in any and all forms, kinds, and classes of insurance business in the State of Indiana. Specifically, Chapter CCCVI, Section 2 described the right of Vernon to conduct an insurance business, as follows:

> That the said corporation shall have full power and lawful authority to insure all kinds of property against loss or damages by [fire,] or any other causes of risk, to make all kinds of insurance against loss or damages on goods and merchandize, whether on land or on water, on vessels or boats wherever they may be, to make all kinds of insurance upon life or lives, to be insured against

---

1. We note that Sally McCarty is the successor to Frank H. Viehmann (Viehmann) as Commissioner of the Department of Insurance of the State of Indiana.

any loss or risk they may have incurred in the course of their business and against any maritime or other risk upon the interest which they may have in any vessel, boat, goods, merchandize, or other property by means of any loan or loans which they may make, or mortgage good and responsible, and generally do and perform all other necessary matters and things connected with and proper to promote their objects.

(Appellant's Appendix p. 45).

In 1899, the Indiana General Assembly passed an Act specifically relating to Special Charter Insurance Companies, currently codified at I.C. § 27–2–2–1 and I.C. § 27–2–2–2. The 1899 Act created certain requirements for special charter companies only, namely the filing of annual verified reports that disclose specified information, relating to, *inter alia,* their capital stock, assets, liabilities, losses, claims, and insureds. *See* I.C. § 27–2–2–1 and I.C. § 27–2–2–2. The 1899 Act also specified the fee that the Auditor of the State (now the Commissioner of the Department of Insurance of the State of Indiana) would charge for an examination of a charter.

In 1935, the Indiana General Assembly enacted the Indiana Insurance Law that is now codified at I.C. § 27–1–1–1 *et. seq.* and includes the creation of the Department (1935 Act). We note that between 1851 and 1940, Vernon's name changed several times. Moreover, Vernon appears to have been inactive from 1910 until it resumed operation in approximately 1940. After resuming operations in 1940, Vernon filed an action for declaratory judgment in Marion County Circuit Court against the State of Indiana, the Governor, the Department, and the Insurance Commissioner to determine what obligations Vernon had, if any, under Indiana's insurance laws, including the 1935 Act.

The parties filed a Stipulation of Facts that stated in part that a controversy existed as to the applicability of the 1935 Act. The Stipulation of Facts also included the Insurance Commissioner's assertion that the 1935 Act required Vernon to perform certain acts as follows: 1) the maintenance of proper reserves; 2) the provision of the same annual or other reports to the Department and the submission to examination by the Department as required of other insurers domiciled or doing business in the State; 3) certain deposits with the Department; and 4) the licensing of its agents in the same manner as other insurers doing similar kinds of business in the State.

Vernon specifically sought a declaratory judgment because Vernon contended that the 1935 Act was inapplicable because the Indiana Constitution prohibited the General Assembly from enacting any law that would impair, abrogate, restrict, or in any manner affect the powers of the General Assembly granted Vernon under its special charter. Vernon also claimed that the General Assembly never intended to cover special charter companies with the 1935 Act.

On July 2, 1942, the trial court ruled in favor of Vernon. The 1942 Declaratory Judgment stated, in pertinent part, the following:

1. [Vernon] was lawfully incorporated under and pursuant to its special charter of incorporation, being a Special Act of the General Assembly of Indiana of 1851 approved February 13, 1851, being Chapter CCCVI of the Local Laws of the Acts of 1851, incorporating the plaintiff under the name "Vernon Insurance, Life and Trust, Trading and Manufacturing Company" of the town of Vernon, Jennings County, Indiana; and said special charter as granted by aid Act of 1851

has not been repealed, amended, abrogated, forfeited, or lost or impaired in any manner or from any cause whatsoever, and said charter is still in full force and effect; and said plaintiff is now a lawfully existing corporation, its name having been changed by proceedings in the Jennings Circuit Court, Jennings County, Indiana, to Vernon General Insurance Company.

2. That [Vernon] is a domestic company duly authorized and qualified in the State of Indiana to engage in such business as granted by the terms of its special charter, and it is thereby duly authorized and qualified to engage in any and all forms, kinds and classes of insurance business in the State of Indiana.

3. That the contracts of insurance of [Vernon] are entitled to be accepted and approved by any public officers wherever such officers are empowered, permitted or required by law to accept or receive tendered contracts of Insurance of companies duly authorized and qualified to do insurance business in the State of Indiana.

4. That said Act of 1851 constitutes a binding, effective contract between the State of Indiana and [Vernon], which the State of Indiana cannot lawfully repeal, amend or abrogate, or alter in any manner as to impair the obligation of such charter or of the Company's rights thereunder.

5. That [Vernon] is subject to such reasonable supervisory regulation, as hereinafter more specifically referred to, as the Legislature may enact respecting the general conduct of [Vernon's] affairs engaging in the insurance business, which do not interfere with, obstruct or impair [Vernon's] exercise and enjoyment of the privileges granted by said special charter.

6. That the provisions of Sections 1 and 2 of Chapter CXXXIV of the Acts of 1899, pages 220, of the Indiana General Assembly entitled "An Act to require Insurance Companies organized by special act of the General Assembly of the State of Indiana to file annual reports with the Auditor of the State" constitute the reasonable regulations enacted by the General Assembly regulating the conduct of the affairs of [Vernon,] and [Vernon] shall make the reports therein required to the Insurance Commissioner, defendant herein, as successor to the Auditor of the State in matters pertaining to Insurance.

7. That [Vernon] and [Vernon's] officers, agents and employees are not subject to the provisions of the any statute of Indiana relating to the subject of Insurance, save and except for Sections 1 and 2 of said Chapter CXXXIV of the Acts of 1899, and more particularly are not subject to any purported regulations contained in Chapter 162 of the Acts of 1935 of the Indiana General Assembly know as the "Indiana Insurance Law"; and except to the extent provided in said Act of 1899, [Vernon] is not subject in any manner to the jurisdiction of the defendant Insurance Commissioner or the Department of Insurance of the State of Indiana.

8. That [Vernon] is duly authorized and qualified to engage in the insurance business in the State of Indiana without obtaining a certificate of authority from the defendant Insurance Commissioner as required under said Insurance Act of 1935, but the plaintiff shall be entitled to receive from said defendant Insurance Commissioner a certificate or statement evidencing the compliance by [Vernon] with said pro-

visions of Sections 1 and 2 of said Act of 1899 when [Vernon] has filed the report required thereby, but in no event shall the obtaining of a certificate from the [Commissioner] be deemed a condition precedent to plaintiff's right to do [ ] insurance business in the State of Indiana.

(Appellant's App. pp. 23–5). The 1942 Declaratory Judgment also stated that the IDOI waived its motion for a new trial and all parties waived their right to appeal. Therefore, the 1942 Declaratory Judgment was a final judgment.

In 1952, the Attorney General issued its Official Opinion No. 78. This opinion stated that special charter insurance companies were not subject to statutes enacted in 1949 relating to the business of insurance, even though the statutory language intended to include them. Specifically, the Attorney General noted that special charters were subject to special insurance reporting statutes that had not been repealed, I.C. § 27–2–2–1 and I.C. § 27–2–2–2, and as a matter of statutory construction, a later general statute would not affect special provisions of an earlier statute that was not repealed.

In 1961, the Indiana General Assembly enacted the Model Act (1961 Act) for the Regulation of Credit Life Insurance and Credit Accident and Health Insurance, now codified at I.C. § § 27–8–4–1, et. seq. I.C. § 27–8–4–1 states the purpose of the Model Act as follows:

The purpose of this chapter is to promote the public welfare through the establishment of unified and consistent rules relating to the implementation and administration of the laws of this state pertaining to credit life insurance and credit accident and health insurance; such as insurances are defined and limited in this chapter.

This Chapter further purports to regulate insurers authorized to provide credit insurance in Indiana, by requiring a license issued by the Commissioner of the Department. Since at least 1946, Vernon has sold credit insurance in Indiana and has reported it to the Department in accordance with the 1899 Acts. Vernon does not have a license issued by the Commissioner of the Department. However, the following is an excerpt of a 1964 Department letter sent to Vernon concerning its position on the licensing of Vernon's agents:

The Department recognizes the position of the Company and is aware that the Vernon General Insurance Company exists and does business in Indiana by authority granted it by the Indiana General Assembly and is not operating by or under the authority of the Department of Insurance of the State of Indiana. No license or Certificate of Authority to the Company by this Department is anticipated or required.

It is the position of the Department that as the Department has no authority over [Vernon] and as [Vernon] is not subject to any insurance law except Sections 1 and 2 of the Acts of 1899, the Department may not require [Vernon] to license its agents nor would the agents of [Vernon] be subject to the supervision of the Department in their capacity as agent of their "principal," the Vernon General Insurance Company.

(Appellant's App. p. 33). Clearly, the Department acknowledged that it had no authority over Vernon. Specifically, the Department could not require Vernon to license its agents, nor could it supervise Vernon's agents. Vernon was only subject to the special reporting statutes for charter insurance companies under I.C. § 27–2–2–1 and I.C. § 27–2–2–2, i.e., Section 1 and 2 of the Acts of 1899, unless it

voluntarily came under the supervision of the Department.

In 1973, the General Assembly recodified the Indiana statutes in the Indiana Code. Under the recodification, I.C. § 1–1–1–2 repealed all acts prior to the codification of the law with the exception of certain acts. The special act that created Vernon's charter, Local Acts of 1851, Chapter CCCVI, was not one of the acts with an exception from the repeal. However, I.C. § 1–1–1–6 states, in pertinent part, that the Code does not affect the "rights, privileges or liabilities accrued, remedies provided, duties imposed, penalties incurred, or proceedings begun before the effectiveness of this Code." Moreover, in 1980, the Attorney General, in part of Official Opinion No. 80–22, cited its 1952 opinion for the proposition that "general acts pertaining to insurance companies do not apply to special charter companies created by the General Assembly prior to the adoption of the Indiana Constitution of 1851." (Appellant's App. p. 31).

On October 17, 2000, the Department filed a Statement of Charges against Vernon. The Department learned that Vernon was offering to sell credit insurance for a 50% commission, and informed creditors that they did not have to be licensed with the Department to sell Vernon's product. The offer exceeded the Department's regulations, which placed a ceiling on the commission for the sale of credit insurance at 42.5% with a maximum of 35% paid to the creditor. Consequently, the Department requested a cease and desist order pursuant to I.C. § 27–4–1–6, prohibiting Vernon from selling credit insurance except in accordance with Indiana law and regulations. The Department also asked that Vernon be fined in the maximum amount allowed by law.

On May 7, 2001, Vernon filed its Petition for Further Relief Based on Declaratory Judgment, precipitated by the administrative charges discussed above. Vernon claimed that the Department was misinforming customers and competitors that Vernon was violating the law. After the IDOI answered the petition, the trial court ordered the parties to submit briefs in support of their respective positions. According to the Chronological Case Summary, the trial court received the supporting briefs from both parties on June 25, 2001. The trial court also heard oral argument on June 25, 2001.

On June 28, 2001, the trial court entered is Order Granting Further Relief Based on Declaratory Judgment, holding that the 1942 Declaratory Judgment remained in full force and effect. Accordingly, the trial court enjoined the Department from acting in contravention with the 1942 Declaratory Judgment Order. The Order Granting Further Relief Based on Declaratory Judgment provides as follows:

> [Vernon,] having filed its Petition for Further Relief based on Declaratory Judgment entered in Cause No. 58293 on July 2, 1942,
>
> And [IDOI,] having objected thereto.
>
> And the Court, having heard arguments on the Petition in open court on June 25, 2001 and being duly advised in the premises, now finds that the special charter conveyed to Vernon in 1851 remains in full force and effect.
>
> The Court further finds that its Declaratory Judgment dated July 2, 1942 remains in full force and effect and hereby renews the same as if fully set out herein.
>
> IT IS THEREFORE ORDERED that the Indiana Department of Insurance be and hereby is ENJOINED from its efforts to regulate Vernon or its agents in violation of its rights as a Special Charter Insurance Company and from disparaging or otherwise misinforming any

person or entity as to Vernon's Special Charter status in such a fashion as to imply that Vernon or it agents are "under investigation" or subject to "pending charges" or that those doing business with Vernon "may be subject to fines, jail, or both."

(Appellant's App. pp. 11–2).

This appeal followed.

## DISCUSSION AND DECISION

■ At the outset, we note that pursuant to Ind.Code § 34–14–1–8, Vernon did not receive or seek a new declaratory judgment. Rather, Vernon sought and received further relief under an existing declaratory judgment. I.C. § 34–14–1–8 provides:

> Further relief based on a declaratory judgment, or decree may be granted whenever necessary or proper. The application for further relief must be by petition to a court having jurisdiction to grant the relief. If the application is deemed sufficient, the court shall, on reasonable notice, require any adverse party whose rights have been adjudicated by the declaratory judgment or decree to show cause why further relief should not be immediately granted.

Moreover, it is well settled that an appeal may be validly waived by agreement of the parties. *Southern Indiana Power Co. v. Cook*, 182 Ind. 505, 107 N.E. 12, 14 (1914) ("A stipulation waiving the right to appeal is valid and binding and bars an appeal taken in violation of its terms. An objection to the appeal may be properly taken in the appellate court by a motion to dismiss based on the agreement. The appeal is dismissed.").

As mentioned above, the 1942 Declaratory Judgment states, "July 2, 1942 Defendants waive motion for new trial and all parties waive right to appeal, and above judgment rendered final." (Appellant's

App. p. 25). Accordingly, the 1942 Declaratory Judgment binds the IDOI. The IDOI admitted that it waived its rights to a new trial and the right to appeal in its Response to Petition for Further Relief. (*See* Appellant's App. p. 39). Thus, we find that the trial court properly granted the 2001 Order Granting Further Relief based on Declaratory Judgment.

In the present case, the IDOI argues that it has supervisory authority over Vernon relating to credit insurance because the 1942 Declaratory Judgment did not decide the issue of credit insurance. Specifically, the IDOI argues that nothing in the 1851 special charter precludes the legislature from exercising control over Vernon's conduct in the credit insurance business pursuant to its police powers. Therefore, the IDOI maintains that the General Assembly's 1961 legislation (I.C. § 27–8–4–1 *et seq.*) regulating the conduct of the credit insurance business in Indiana is valid and applicable to Vernon.

To support its claim of authority, we find that the IDOI disregards the context of Vernon's special charter, key language from the 1942 Declaratory Judgment, and its own prior opinions on the subject of Vernon's special charter. Vernon's charter is one of perpetual existence so long as it complies with corporate organizational laws and the insurance laws directed to special charter companies. There are no allegations in the Statement of Charges filed by the Department on October 17, 2000, that Vernon violated any applicable laws or regulations. Because Vernon has maintained its status in accordance with its special charter, the cases cited by the IDOI construing the enforcement of charters against the charter companies are inapplicable here. *See Bank of Commerce v. Wiltsie*, 153 Ind. 460, 53 N.E. 950, 955 (1899); *Union Insurance Company v. State*, 401 N.E.2d 1372, 1375–77 (Ind.Ct.

App.1980); *State on the relation of Weir v. Dawson,* 16 Ind. 40 (Ind.1861). These cases are distinguishable because Vernon was properly organized and no expiration date was given on its special charter.

■ Here, the special charter granted to Vernon in 1851 included the right to insure all kinds of property against risk, including the lives of the insured, any loss or risk incurred in the course of business, or "other risk upon the interest which [the insured] may have in any ... property by means of any loan or loans that [the insured] may make, or mortgage good and responsible, and generally do perform all other necessary matters and things connected with and proper to promote their objects." (Appellant's App. p. 45). This language clearly includes the right and privilege to issue credit life and credit accident and health insurance.

The special charter granted to Vernon conveys many rights and privileges. However, the charter does not provide for regulation by IDOI, nor does the charter subject Vernon to subsequent state insurance laws. The IDOI's reliance on Section 6 of Acts of 1851 to support its claim that Vernon is subject to its regulation is misplaced. (Appellant's Br. pp. 12–3). This section of the special charter relates to the management and organization of Vernon. The last proviso is to be read in conjunction with the paragraph, not on its own as the IDOI suggests. However, even on its own, the proviso refers to the organization of the company. Therefore, under this language, Vernon is only subject to the state laws respecting corporate organization and procedure. Thus, this language does not bring Vernon's charter under the regulation of IDOI and its insurance laws.

In fact, the 1942 Declaratory Judgment specifically states, "Vernon is not subject to the provisions of *any* statute of Indiana relating to the subject of insurance...."

(Appellant's App. p. 24) (emphasis added). Here, the IDOI argues that a new regulation or statute gives it the ability to relitigate its relationship with Vernon. However, this interpretation defeats the purpose of the 1942 Declaratory Judgment. The 1942 Declaratory Judgment limited Vernon's regulation to the provisions of the 1899 Act, *i.e.* I.C. § 27–2–2–1 and I.C. § 27–2–2–2, and specifically prohibited other regulation by the Department.

The rights and privileges granted under the special charter to Vernon include the ability to issue credit insurance. The charter does not require Vernon to be regulated by subsequent legislation; rather, it is the right of Vernon to decide whether or not to avail itself of subsequent regulations. When the new legislation passed in 1935 that created the Department and enacted the State's insurance laws, the parties litigated the matter. After a bench trial, the trial court found that Vernon was not subject to regulation by the Department or any statutes regulating insurance other than those applicable to special charter companies, *i.e.* I.C. § 27–2–2–1 and I.C. § 27–2–2–2. The subsequent enactment of credit insurance statutes cannot alter the scope of Vernon's special charter or the 1942 Declaratory Judgment.

As set out above, we note that the Attorney General issued several opinions that confirmed the expansive scope of Vernon's special charter. We also point out that the 1964 letter that the Department sent to Vernon stating that the Department did not have any authority over Vernon.

■ In the instant case, the issue is the same issue that was litigated in 1942: whether Vernon is subject to regulation under any general Indiana statute relating to the subject of insurance other than the 1899 Act, or to the jurisdiction or regulation of the IDOI. A trial court of compe-

tent jurisdiction ruled in favor of Vernon. Therefore, the IDOI is barred by the doctrine of res judicata. *See Indiana Ins. Co. v. American Community Services,* 718 N.E.2d 1147, 1155 (Ind.Ct.App.1999) (controversy adjudicated in former action between the same parties rendered on the merits by a court of competent jurisdiction precludes the repetitive litigation of the same dispute). Because the matter of the scope of Vernon's special charter has already been litigated and decided, the IDOI is also barred from raising the issue by the doctrine of collateral estoppel. *See Sullivan v. American Casuality Co. of Reading, Pa.,* 605 N.E.2d 134, 137 (Ind.1992).

■ Next, the IDOI claims that the trial court erred in granting further relief based on the 1942 Declaratory Judgment in its 2001 Order Granting Further Relief Based on Declaratory Judgment. Specifically, the IDOI asserts that in 1973 the General Assembly repealed the legislation of 1851 that established the special charter of Vernon. We disagree.

As mentioned above, in 1973 the General Assembly recodified Indiana statutes in the Indiana Code and repealed all acts prior to the codification of the law with the exception of certain acts. It is true that the Act creating Vernon's special charter was not among the exceptions listed in I.C. § 1–1–1–2. However, a later section of the Indiana Code preserved the special charter of Vernon. Specifically, I.C. § 1–1–1–6 states:

> Sec. 6. Preservation of Penalties, Offenses, Rights, Liabilities....
> This Code does not affect rights, privileges, or liabilities accrued, remedies provided, duties imposed, penalties incurred, or proceedings begun before the effectiveness of this Code....

Clearly, Vernon's special charter was a right and privilege accrued before the effectiveness of the Code, and therefore, remains in full force and effect today.

■ The record reflects that Vernon has continuously acted in accordance with the terms of its special charter. There is no evidence that Vernon needed to assert the rights under its charter or the 1942 Declaratory Judgment until the Department filed its Statement of Charges on October 17, 2000. The charges prompted Vernon to seek further relief based on the 1942 Declaratory Judgment. The IDOI claims that Vernon's challenge of the 1973 repeal of the Acts of 1851 should be considered void under the doctrine of laches. However, we find that the elements of laches are not satisfied. Vernon has continuously acted within the terms of its special charter by filing annual reports with the Department in accordance with I.C. § 27–2–2–1 and I.C. § 27–2–2–2. Moreover, Vernon has promptly asserted its rights every time the IDOI has challenged its status as a special charter.

■ Our Supreme Court noted that the Indiana Code was "merely a compilation of the existing law of the State ... [and] the existing law as recognized in I.C. § 1–1–1–6 is preserved." *Deweese v. State,* 258 Ind. 520, 282 N.E.2d 828, 831 (1972) (citations omitted). Accordingly, we find that the Acts of 1851, which granted Vernon's special charter, were still in existence when the laws were codified and preserved in 1973. This conclusion is supported by a 1951 Attorney General Opinion, which noted, "statutes are to be considered prospective, unless the intention to give a retrospective operation is clearly expressed, and not even then, if by such construction, the act would divest vested rights." (Appellee's App. pp. 9–10). The preservation clause in I.C. § 1–1–1–6 makes certain that vested rights in existence prior to enactment of the Indiana Code in 1973 were not divested.

■ After Vernon's special charter was created in February of 1851, the

Indiana Constitution was adopted on November 1, 1851. The Indiana Constitution prohibited the creation of special charter companies; however, such prohibition did not repeal the rights of the existing special charter companies, including Vernon. To apply the credit insurance statutes retroactively to Vernon would defeat the principles of statutory construction when retroactive intent was not clearly expressed, and would improperly divest Vernon of its vested charter status. *See* I.C. § 1–1–1–6. Furthermore, we find that the 1942 Declaratory Judgment conclusively established that Vernon's special charter constitutes a vested right to sell all types of insurance subject to the Acts of 1899, *i.e.* I.C. § 27–2–2–1 and I.C. § 27–2–2–2. The 1942 Declaratory Judgment also established that Vernon is not subject to regulation by the Department or by general insurance laws. If the General Assembly did not intend to preserve existing rights, privileges, and prior proceedings that occurred before the enactment of the Indiana Code in 1973, it would not have specifically enacted I.C. § 1–1–1–6, which precisely states this principle. Basically, the issuance of the 1942 Declaratory Judgment serves as an additional ground for upholding Vernon's special charter pursuant to I.C. § 1–1–1–6. The trial court held that Vernon's special charter was a contractual right: "the Act of 1851 constitutes a binding contract between the State of Indiana and [Vernon], which the State of Indiana cannot lawfully repeal, amend, or abrogate, or alter in any manner as to impair the obligation of such charter or of [Vernon's] rights thereunder." (Appellant's App. pp. 23–4). This ruling was issued before the effectiveness of the 1973 Indiana Code, and likewise preserved the rights conferred within to Vernon.

Finally, the IDOI argues that there is nothing in Vernon's special charter that precludes the General Assembly from exercising its police powers over Vernon. However, we find that the separation of powers doctrine was not violated because the General Assembly did not include special charter companies as a part of the credit insurance statutes. *See* I.C. § 27–8–4–1 *et seq.*

With all of the above in mind, we conclude that Vernon is not subject to the jurisdiction of, or regulation by, the IDOI. The provisions of the Vernon's 1851 special charter, the 1942 Declaratory Judgment, and the 2001 Order Granting Further Relief Based on Declaratory Judgment are valid and properly enforce the rights and privileges of Vernon as a special charter.

### CONCLUSION

Based on the foregoing, we conclude that the trial court properly granted the 2001 Order Granting Further Relief Based on Declaratory Judgment.

Affirmed.

MATTINGLY–MAY and ROBB, JJ., concur.